[Crim. No. 2135.   Third Dist.   June 21, 1949.]

THE PEOPLE, Respondent, v. ROBERT SALAIS, Appellant.

Herbert E. Paul for Appellant.

Fred N. Howser, Attorney General, and Doris H. Maier, Deputy Attorney General, for Respondent.

ADAMS, P. J.—In an information filed in Stanislaus County appellant was charged with an assault with intent to commit rape, upon the person of Mary Corman. A verdict of guilty was returned by the jury, a motion for a new trial was denied, and from the court's judgment and order denying a new trial defendant has appealed on the sole ground that the evidence is insufficient to support the judgment.

Mrs. Corman was employed in Modesto and lived in a trailer on the property of John Daggs. Defendant lived in a cabin about 120 yards from Mrs. Corman's trailer. The parties had known one another for two years.

Mrs. Corman testified that late in the night of May 16, 1948, she returned from work and was preparing to retire when she heard one of her pet kittens crying. She left the trailer to find the kitten, and with the aid of a flashlight located it under the trailer. As she stooped to pick it up Salais seized her about the throat, and, choking her, dragged her around behind the trailer, and finally struck her on the head, whereupon she lost consciousness. When she recovered her senses her clothes were over her head, her underclothes were torn off, and they and the flashlight were lying near her. She heard someone calling and Mr. Daggs appeared on the scene.

Mr. Daggs testified that on the night of the assault, when he had just returned from a dance, he heard someone calling for help; that he seized his flashlight from his car and ran to Mrs. Corman's trailer; that he saw defendant on top of Mrs. Corman, but as he threw his flashlight on the scene defendant ran and jumped over a fence; that Mrs. Corman was staggering, with blood running out of her mouth, and her clothes torn and dirty; that he took her to his house and then contacted the sheriff's office.

Mr. Hawley, a deputy sheriff, who responded to the call, testified that he saw Mrs. Corman, that she had blood on her mouth and marks on her throat, that there were foxtails and weeds in her hair and on her clothes, and she was in a hysterical condition. He then went to Salais' house and found him in bed. He asked defendant to come with him, and when he dressed saw blood on his underwear. He took defendant to Mrs. Corman who identified him. He then took Mrs. Corman to the hospital.

Dr. Clague testified that Mrs. Corman was brought to the county hospital about 3 a. m.; that he examined her and found a swollen lip, bruises on her throat, and dirt and minor abra-

sions about the entrance to the vagina; and that she was menstruating.

Salais testified on his own behalf that he had previously answered flashlight signals from Mrs. Corman when she had something wrong with her trailer; that the night of the offense charged he had been in town drinking, that he returned to his trailer home about 2 a. m. feeling sick; that he saw flashes of light from Mrs. Corman's trailer, so went over there; that Mrs. Corman said she needed some money, but he would not lend it to her; that she said "Let's go again," and sat down on the grass; that he pulled her dress off and started to pull her pants off, but, feeling sick again, changed his mind; that he then turned and saw Mrs. Corman with his wallet in her hand; that he "must have got mad or something" and slapped her; that she did not "holler," but that he saw Mr. Daggs' flashlight and left after getting his wallet back.

On rebuttal Mrs. Corman denied the testimony of defendant.

On this appeal it is urged by appellant that, when viewed from the standpoint of "time element" the evidence of the prosecution is physically impossible; that Mr. Daggs was on the scene so soon after the events to which Mrs. Corman testified that they could not have happened; that there was insufficient lapse of time between her calls for help and the appearance of Mr. Daggs for such actions on defendant's part as were shown by the testimony.

But it was for the jury to determine whether or not there was time for defendant to commit the acts to which Mrs. Corman testified. Defendant's own testimony tends to show that there was a considerable lapse of time after he appeared at Mrs. Corman's trailer, and that there was a struggle between the two during which, as he says, Mrs. Corman extracted his wallet from his pocket and he forcibly recovered it; so it is obvious that, at the trial, defendant did not rely upon the "time element"; and he also said that Mrs. Corman did not "holler."

A judgment of conviction will not be reversed upon the ground that the testimony of a prosecuting witness is inherently improbable, even though it may contain inconsistencies and contradictions, unless it is so clearly false and unbelievable that reasonable minds may not differ in that regard, or the facts asserted are physically impossible; and it is the sole province of the jury or the trial judge to determine the credibility of witnesses and the weight to be given their testimony. (*People* v. *O'Moore,* 83 Cal.App.2d 586, 598

[189 P.2d 554] ; *People* v. *Jefferson,* 84 Cal.App.2d 709, 713 [191 P.2d 487] ; *People* v. *Jackson,* 63 Cal.App.2d 586 [147 P.2d 94].)

The judgment is affirmed.

Schottky, J. pro tem., and Thompson, J., concurred.