[Crim. No. 2128.   Third Dist.   Oct. 5, 1949.]

THE PEOPLE, Respondent, v. ISAAC MANUEL, Appellant.

Henry W. Mahan for Appellant.

Fred N. Howser, Attorney General, and Doris H. Maier, Deputy Attorney General, for Respondent.

THOMPSON, J.—The defendant was tried by a jury and convicted of lascivious acts upon a 5-year-old child, contrary to the provisions of section 288 of the Penal Code. He contends that the verdict and judgment are not supported by the evidence chiefly because the child was not competent to testify and because her evidence is inherently improbable. He also asserts that the court erred in receiving evidence of defendant's failure to contradict a charge of guilt which was made within his hearing, and in giving to the jury an instruction on that subject.

The parents of the child lived with their family in the upper story of a cottage on Liberty Island in Solano County. The girl, who was called ''Ann,'' was 5 years of age, and apparently quite intelligent. The mother was a registered nurse. The father and Joe Jose were engaged with the defendant as partners in a farming enterprise on that island. The family and the other partners ate their meals together in a separate building near by, which was called the ''kitchen.'' The mother of the child did the cooking for all of them. In the two-story building where the parents lived there were two adjoining rooms on the lower floor. A mere partition of boards separated the two rooms. The defendant and Joe Jose slept in separate beds in one of the rooms on the ground floor. The other room was connected with their bedroom by a door, and was vacant. About 8 o'clock on the evening of May 22, 1948, Ann's father asked her to go and tell the defendant to come to dinner. The child went to do

so. After the child had been gone 10 minutes or more, the mother became anxious about her failure to promptly return and went from the kitchen to the defendant's room in search of her. She found the door locked and she entered the adjoining room through a door from the garage. She found Ann in that vacant room near the door leading to the defendant's bedroom, which was closed. The child was then putting on her panties. Her undershirt was on, and her sunsuit lay upon the floor. The mother immediately became suspicious and called to the defendant by name. He was then in the adjoining room. He promptly answered her. Within the hearing of the defendant she then asked Ann, "Who took off your clothes?" The child replied, "Isaac did it, Mommy." The defendant did not deny that statement or reply to that charge. The mother admonished the defendant, and took the child away with her. She discussed the affair with her husband. The child told her parents that the defendant took off her clothes and placed her on a bed in his room and performed the lascivious acts with which he was subsequently charged. The mother, being a registered nurse, examined the child and found that her parts were inflamed. The parents took her to a physician in Rio Vista, who made a physical examination and took a "smear" for analysis. He promptly communicated with the probation officer regarding the affair. He did not testify as a witness at the trial. The following day the parents and the probation officer interviewed the defendant in the presence of the child, and told him exactly what the child had told them regarding his licentious conduct. He was then asked, "Do you think this little girl would tell a lie?" to which inquiry he merely bowed his head and made no reply. It is true that during that conversation the defendant said "I did not do this thing." He said, "She was the one that touched mine." But subsequently he wrote a letter to the parents asking them to "Please excuse the thing that I have done." He then asked them to take pity on him and to settle the matter between themselves and permit the farming partnership business to continue.

The testimony of the mother and the probation officer at the trial was quite convincing and fully supports the verdict and judgment of the court. The evidence of the child adduced at the trial was also very persuasive of the guilt of the defendant. She appears to have been unusually intelligent and clear-minded for a child of 5 years of age. She was fully and carefully examined as to her knowledge of the so-

lemnity of an oath and as to her qualifications to become a witness. There is nothing in the record to indicate that she was not entirely qualified and competent as a witness. The court concluded that she was qualified, and we concur in that ruling.

There are some slight discrepancies in the evidence, which are not of importance, and which may be readily reconciled. The mother had the impression and testified that the child told her the offense occurred in the vacant room adjoining the defendant's bedroom. The child stated that the defendant took off her clothes and committed the offense in his bedroom. There is no dispute over the fact that when the mother arrived the child was just putting on her panties in the vacant room adjoining the defendant's bedroom, and that he was then within hearing beyond the closed door and the board partition, for he answered the mother's call to him. The child's sundress then lay upon the floor near that door. The mother may have erroneously gotten the impression that the offense was committed in that room. That discrepancy is immaterial. At least it is reconcilable. There is no doubt the child told the mother that the defendant committed the offense. It was the duty of the jury to reconcile the evidence if reasonably possible.

The child's testimony was not inherently improbable. It has been frequently held that a judgment will not be reversed on the ground that the evidence is inherently improbable unless the statement of material facts is physically impossible or so clearly false and unbelievable that reasonable minds may not differ with respect thereto. (*People* v. *Showers,* 90 Cal.App.2d 248, 253 [202 P.2d 814] ; *People* v. *Salais,* 92 Cal.App.2d 533, 535 [206 P.2d 1109] ; *People* v. *Pyle,* 80 Cal.App.2d 498 [181 P.2d 644] ; *People* v. *Carlson,* 73 Cal.App.2d 933, 937 [167 P.2d 812].)

We are satisfied the child in this case was not incompetent to testify as a witness. The record of her preliminary examination indicates that she was bright, intelligent and fully qualified to testify as a witness. The law does not fix any standard of intelligence required of a witness, but leaves the determination of that capacity almost wholly to the discretion of the trial court. The qualification of an infant child to become a witness is not determined entirely by its age, but rather upon its intelligence, understanding and knowledge of the solemnity of an oath. When it appears that a child is intelligent, and possesses such knowledge and ability to reasonably state the facts of the case, and appreci-

ates the solemnity of an oath, the determination of a court after examination that it is competent to testify as a witness will rarely ever be interfered with on appeal. (Code Civ. Proc., § 1880; *People* v. *Ash,* 70 Cal.App.2d 583 [161 P.2d 415]; *People* v. *McKelvey,* 91 Cal.App. 684, 688 [267 P. 390]; *Cheeseman* v. *Cheeseman,* 99 Cal.App. 290 [278 P. 242]; *People* v. *Morcumb,* 28 Cal.App.2d 465, 467 [82 P.2d 714]; 27 Cal.Jur. § 25, p. 37; 11 Cal.Jur. 10-Yr. Supp. § 25, p. 624.)

The admission of the statement of the mother that she told the defendant, in the room where she found her daughter unclothed and putting on her panties, that the child said he had removed her clothes, to which accusation he made no reply, was not prejudicial. We think it was competent. The defendant was just beyond an intervening door and responded when the mother called his name. Clearly he heard and understood the nature of the charge that was made against him. That statement may be deemed to have been made in his presence notwithstanding the fact that a door intervened between them when the statement was made, for the reason that his response indicated that he clearly heard and understood the nature of the charge. Moreover, the evidence shows that same statement in greater details was subsequently made in the immediate presence of the defendant when the mother, the child and the probation officer were present, to which accusation he at first made no reply, but merely bowed his head and said nothing. He was then definitely charged with actually tampering with the child by performing licentious acts upon her body. It is true that he afterward said "I did not do this thing." We may assume that was not a denial that he removed the child's clothing, but rather that he was thereby denying that he actually performed the licentious acts upon her with which he was then charged. The evidence is therefore not prejudicial, but merely cumulative. His subsequent letter to the parents appears to refute his denial that he performed the acts with which he was charged.

The court did not err in giving to the jury an instruction which in effect charged the jury that if it found that the defendant was accused of the licentious acts against the child, and that fully understanding and appreciating the charge, he failed to deny it, or that he made false or evasive statements with regard to that accusation, the jury had a right to consider that fact in determining the defendant's

guilt. That instruction correctly informed the jury that:

". . . Evidence of such an accusatory statement is not received for the purpose of proving its truth, but only to explain the conduct of the accused in the face of it; and unless you should find that his conduct at the time indicated an admission that the accusatory statement was true, you should entirely disregard the statement."

Instructions similar to the foregoing one were approved in several California cases. (*People* v. *Willmurth*, 77 Cal. App.2d 605, 615 [176 P.2d 102]; *People* v. *Amaya*, 134 Cal. 531, 541 [66 P. 794]; *People* v. *Richardson*, 83 Cal.App. 302, 306 [256 P. 616]; *People* v. *Bailey*, 91 Cal.App.2d 578, 581 [205 P.2d 418].)

The judgment is affirmed.

Adams, P. J., and Peek, J., concurred.