[Crim. No. 4980. Second Dist., Div. Two. Nov. 16, 1953.]

THE PEOPLE, Respondent, v. WALTER STEVENS ERNST, Appellant.

Morris Lavine for Appellant.

Edmund G. Brown, Attorney General, and Michael J. Clemens, Deputy Attorney General, for Respondent.

MOORE, P. J.—Appellant was convicted of violating section 288 of the Penal Code.* After his motions for a new trial and arrest of judgment had been denied, proceedings were suspended and he was placed on probation for five years on terms, one of which required that he serve six months in the county jail. His grounds of appeal are the incompetency of the two child witnesses, the insufficiency of the evidence, errors in the court's rulings and instructions, disqualification of the judge and lack of jurisdiction.

About noon on January 31, 1952,. appellant called at the home of Mrs. T. and told her that since her daughter, referred to herein as "X," was interested in taking dancing lessons, he desired to arrange for her to enroll in the school of Mrs. Todd who resided opposite to his home in Monterey Park, one block from Mrs. T.'s home. Such offer was politely rejected, X having already arranged for a visit to Mrs. Todd in the afternoon with her friend and schoolmate, Y. When X arrived at home from school, her mother had her accompany Y to the Todd home. On leaving Mrs. Todd, the children found appellant seated in his truck in the street. He told X he was just going to call for her at her home and asked her to go into his house that he might comb her hair. Her mother had previously employed Mrs. Ernst to give X a permanent, at which time X first met appellant. After parking the truck in his driveway, the two children entered through the rear door of the home with appellant and were seated in the front room. After he had served them peppermint ice cream in a bowl, appellant directed X to go with him through the hallway into a small room and had Y remain where she was and look at a magazine. He had X sit on his lap and began to comb her hair. As he did so he placed his hand beneath her panties and rubbed her private parts for about a minute and asked her how she liked it. He

---

*"Any person who shall wilfully and lewdly commit any lewd or lascivious act including any of the acts constituting other crimes provided for in part one of this code upon or with the body, or any part or member thereof, of a child under the age of fourteen years, with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of such person or of such child, shall be guilty of a felony and shall be imprisoned in the State prison for a term of from one year to life."

then took X back to join Y and asked X whether she would like for him to comb Y's hair. After he had done so, the children departed. On the way home X told Y what had happened and immediately after arriving home she related her experience to her parents. Her father notified the police.

X was 8 years old and Y was 9. The latter's testimony of the events outside the den was, in substance, the same as that of X. She added that (1) they were in appellant's home about 20 minutes, (2) as they were leaving, appellant called X back into the rear porch and talked to her out of Y's hearing, (3) while they were crossing the street, X was crying as she told about appellant's conduct.

### The Children, Competent Witnesses

Section 1880 of the Code of Civil Procedure forbids children under 10 years of age to be witnesses if they "appear incapable of receiving just impressions of the facts respecting which they are examined, or of relating them truly." That language imposes upon the trial judge in any case to determine whether a child under 10 years is a competent witness. It means that if such child appears to the trial judge to have had the capacity to receive impressions and to relate them truthfully, he is a competent witness. Moreover, her testimony on the material issues indicates her competent intelligently to have received the impressions and intelligibly to report them. And when the judge has heard the child testify in the matter, and "has determined that he was a competent witness, such determination is not a matter for review any more than his ruling upon the capacity of any other witness." (*People* v. *Harrison,* 46 Cal.App.2d 779, 785 [117 P.2d 19].)

The question as to the competency of a witness who has not reached his 10th year is addressed to the discretion of the trial court. (*People* v. *Goff,* 100 Cal.App.2d 166, 170 [223 P.2d 27].) In the Goff case, the prosecutrix was a child of 5 years. The court determined after her *voir dire* examination that she was qualified, and also after giving her testimony. It was held that there was no abuse of discretion.

The competency of a child to testify is not determined entirely by its age but rather on its intelligence, its understanding of the meaning and solemnity of an oath. And when it exhibits the ability reasonably to state the facts and it thus qualifies, the trial court's finding will not be disturbed on appeal. (*People* v. *Manuel,* 94 Cal.App.2d 20, 24 [209 P.2d 981].) On a consideration of a court's finding of a child's competency, the entire record will be reviewed on

appeal. (*People* v. *Arcia,* 85 Cal.App.2d 127, 129 [192 P.2d 31] ; *People* v. *Harrison, supra.*)

█ While X and Y did not answer all questions on *voir dire* as philosophers might have done, yet they gave correct answers to many. The testimony of each of them was responsive and coherent. Because it demonstrates that each was intelligent enough to receive impressions and capable of intelligibly relating them, any deficiency shown in her *voir dire* examination will be overlooked. (*People* v. *Harrison, supra,* p. 785.) The narrative of X that she first met appellant at his home, that he kissed her there on two prior occasions on a Saturday and a Tuesday; that he met her and Y as they left Mrs. Todd's and asked them into his home; that he served them with peppermint ice cream and took her into an adjoining room to comb her hair—her testimony of those and subsequent events all sound like the testimony of a witness of understanding and are such proof as to justify the determination of the trial court.

The foregoing observations relative to X's qualification as a witness are equally applicable to Y.

### EVIDENCE SUFFICIENT

As corroboration of X's testimony, in addition to that of Y, her mother testified that on reaching home about 5 p. m. her daughter was crying, shaking and upset. She heard her "tell Y that he rubbed her." Her father reported the incident to Sergeant Hoiten who called and quizzed X for half an hour in the presence of the mother. The father testified that on her arrival home she was "more or less hysterical." When he called on the police, Sergeant Hoiten and a stenographer returned with him. After the interrogation, X directed the officer and her father to the residence of appellant. Sergeant Hoiten testified that in the evening he called at appellant's home and found a half carton of peppermint ice cream in the icebox. In response to the imputation of the interest of the parents in the political aspirations of appellant for the city council, both Mr. and Mrs. T. testified that they had never heard his name mentioned during the councilmanic campaign in which Mr. T. favored the election of one Marria.

The foregoing is a summary of all the proof adopted by the court. Appellant himself testified to an alibi and was persuasively supported by a number of witnesses. He urges here the strength of that defense. But while a verdict favorable to him, by virtue of his alibi, would have been supportable according to the rules of appellate procedure, it was

rejected by the jury and the trial court. In such event, this court is powerless to interfere on the ground of the insufficiency of the evidence. (*People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778].) ▮ Also, counsel argues that there was no substantial evidence that the defendant had touched the body of X "with intent to arouse her passions or his passions . . . she had no knowledge regarding it and there was no statement that the place rubbed was the sexual organs." But the testimony of the child was that he rubbed her private parts. That she had "no knowledge regarding it" renders his act even more culpable. That he referred to the rubbing and not to the combing was answered by the verdict. That the prosecution was based upon X's report of the incident in appellant's home and not upon his political aspirations was the finding of the jury.

### No Prejudicial Error in Rulings

▮ Appellant contends that he was prejudiced by the court's ruling which permitted the prosecution to "bring out new matters elicited by the cross-examination. Of course then impeaching appellant by proving the untruth of the new matters not brought out on direct examination" and appellant's thesis is fundamental and is sound. But it is not the complete story. On direct examination appellant told that he was an investigator for the state Legislature of corrupt police departments; that his home had been searched and his reports had been tampered with. It was clear to the prosecutor that from such proof it would be contended that the police department of Monterey Park abhorred such investigation and had framed appellant for the purpose of halting the investigation or of minimizing the effect of appellant's reports. Such fear or suspicion on the part of the prosecutor was reasonable and is proof of his alertness to the pitfalls of a criminal trial. It was therefore timely and appropriate that appellant be asked whether he had made a written report of his investigation of Monterey Park's Police Department and whether Sergeant Hoiten's name was mentioned. Over objection he answered that it was. Had the inquiry on this point ceased with appellant's testimony that his home had been searched and his reports "tampered with," the deduction that a cruel, corrupt and dishonest police force feared an investigation could have been drawn. Such deduction was to be prevented only by pursuing the inquiry until some concrete basis could be found whereby to repel any such unfair conclusion. Consequently, after appellant testified that

he had made an investigation of the Police Department of Monterey Park, it was only fair to allow the People to prove by the secretary of the state Senate that no report had ever been made by appellant concerning such police department and that Sergeant Hoiten's name had never been mentioned. Such evidence was competent to forestall an unfair deduction: not to impeach appellant.

A person accused of crime cannot limit his own cross-examination by testifying to a state of things inconsistent with, or contrary to, the evidence of the prosecution, and thereby avoid testifying expressly with relation to the precise facts. "He can be cross-examined with respect to facts or denials which are necessarily implied from the testimony in chief, as well as with respect to facts which he expressly states." (*People* v. *Mayen*, 188 Cal. 237, 257 [205 P. 435, 24 A.L.R. 1383].) Language to the contrary in *People* v. *Arrighini*, 122 Cal. 121, 127 [154 P. 591], must be deemed to have been impliedly overruled by later cases. (*People* v. *Zerillo*, 36 Cal.2d 222, 228 [223 P.2d 223].) The Penal Code, section 1323, specifically authorizes the cross-examination "as to all matters about which he (accused) was examined in chief."

Assignment is made of the court's answering the question of a juror, to wit: "Why at no time, for either the People's side or the defendant's side a doctor or a psychiatrist wasn't called in?"

"THE COURT: Well, as a matter of fact I do not believe that the testimony of either an M.D. or of a psychiatrist would have been of any benefit in this lawsuit. In the final analysis you are either going to believe one group of witnesses or another group of witnesses, and although psychiatrists have a place in this world I do not believe that the testimony of one would have helped us any in this lawsuit.

"MR. LAVINE: May it please the Court I wish to differ with your Honor, because of the testimony of Mrs. Taylor, the testimony brought out on cross-examination, that they did not take the child to a doctor, and I will argue that in the lawsuit.

"THE COURT: Mr. Lavine will argue, he says, whether or not it was good judgment in not taking her to a doctor, but I do not believe that it would have helped much in this lawsuit."

Appellant argues that he was prejudiced by the court's answer in that it "was argumentative and invaded the prov-

ince of the jury." In the first place, no objection was made to the juror's question, and no motion was made to strike the judge's answer and no instruction was requested for the purpose of advising the jury as to the limitations of the judge's language. A litigant cannot withhold his objections and motions with respect to the conduct of a trial and, on appeal, challenge the acts of the trial court. It should have the first opportunity to correct its rulings or instruct with reference to any inappropriate remark.

But there was no prejudice caused appellant by the judge's answer. (See *People* v. *Delgado,* 37 Cal.App. 807, 810 [174 P. 24].) The total sum and substance thereof was that in the action on trial, the judge did not think a doctor's testimony would do any good. He was correct.

Assignment as prejudicial is made of the following remarks by the court to the jury: "Ladies and gentlemen, before instructing you I want to refer to that homely illustration of not being able to see the forest for the trees. I hope you will be able to get to the real issues of this matter and be able to weed out the extraneous issues. A great deal has been said and a great deal of emphasis put upon impeachment of witnesses. I think it has been pretty well explained to you what that word means. In the final analysis you are going to have to determine who was telling the truth here, and it will be a deliberate situation. Either one side or the other is essentially and deliberately lying. There would be nothing that could reconcile the testimony of both sides. I just want to point that out to you.

"I might also point out, in view of the fact that so much has been said about impeachment, that I do not believe any person who attended the Rose Bowl game last year would forget, for instance, that they had attended that game, although by now they might have forgotten who was seated on one side or the other of them or what clothing they wore or what other people they saw there. Maybe a week or two later they might have forgotten those facts, or even that they saw the Governor there; but the mere fact that they could not remember those details does not mean that they could not remember the important thing of being there. I just give you that as an illustration. Now what you are going to have to determine here is who was telling the truth. And it will be a deliberate situation."

Such comments were in no sense unfair. They were strictly in accord with the constitutional provision for a judge to

comment on the evidence. (Art. VI, § 19.)* No mention was made of any particular witness as might legally and appropriately have been done. (§ 19, *supra*.) The comment was applicable to both groups of witnesses with no invidious contrasts. It was not a full and free exercise of the power conferred by section 19. The comment was designed merely to arouse the interest of the jury to the point of considering and estimating the significance of the testimony of all witnesses. When one group of witnesses say that the accused was at a designated house at a certain hour of a specified day and did the acts named in the pleading and the other group of witnesses say that he was at other places at and near the time specified, how could the comment of judge prejudice either side by saying to the jury that one of the two groups of witnesses was lying and the jury would "have to determine here who is telling the truth." Section 19 has been judicially approved and adopted as a rule for trial courts. (*People* v. *Ottey,* 5 Cal.2d 714, 723 [56 P.2d 193].) The comment criticized is not argumentative, neither did it deprive the jury of its freedom to weigh, consider and determine the merits of every witness.

 Criticism is made of the last portion of the cautionary instruction as follows: ". . . and the fact that the charge here made is one difficult to disprove should not defer [sic] you from rendering a verdict of guilty, if you are convinced beyond a reasonable doubt that the defendant is guilty as charged." The quoted portion did not weaken, modify or detract from the preceding customary instruction given to the jury as a caution to examine the testimony of the prosecutrix with great care. The two parts of the entire instruction are not antagonistic. Neither does the above-quoted portion indicate an opinion of the court as to the comment "in order to uphold the dignity of the court" since it left to the jury the function of determining what was the truth. (*People* v. *Ahsbahs,* 77 Cal.App.2d 244, 251 [175 P.2d 33].) Where the testimony of the only two witnesses at the trial of an action is in direct conflict on the paramount issue of fact, common sense and legal logic continue to compel such construction of the section (19) "as will permit the trial

---

*"The court may instruct the jury regarding the law applicable to the facts of the case, and may make such comment on the evidence and the testimony and credibility of any witness as in its opinion is necessary for the proper determination of the case. The court shall inform the jury in all cases that the jurors are the exclusive judges of all questions of fact submitted to them and of the credibility of the witnesses."

court by virtue of its intimate and peculiar knowledge of the witnesses to advise the jury that one of the witnesses has committed perjury." (*Pomerantz* v. *Bryan Motors, Inc.,* 92 Cal.App.2d 114, 119 [206 P.2d 440].) The trial judge having carefully reminded the jury that it devolved upon them to decide the question at issue without regard to the court's comment, it is difficult to conceive how a prejudice could have resulted to appellant. The very instruction given was approved in *People* v. *Arechiga,* 72 Cal.App.2d 238, 240 [164 P.2d 503], as an accurate statement of the law on the subject. (See *People* v. *Westek,* 31 Cal.2d 469, 481 [190 P.2d 9]; *People* v. *Todd,* 91 Cal.App.2d 669, 673 [205 P.2d 453].)

### HOLDING COURT AT ALHAMBRA NOT PREJUDICIAL

██ Appellant contends that the municipal court building in Alhambra is not an authorized place for holding court and that therefore the trial of appellant in those quarters was taking evidence out of court. Such contention is based upon the statutory provision that no sessions of the superior court shall be held in any city meeting the requirements of sections 73, 73b or 142 of the Code of Civil Procedure unless the city hall of that city is at least eight miles from the city hall of the nearest city in which sessions of the superior court are lawfully held. Also, the adequacy of any proposed quarter must be approved in advance by a majority of the judges of the superior court if such sessions are legally authorized to be held in such city for the first time. Therefore, argues appellant, since the trial was outside the jurisdiction of the court, it was a nullity, citing *In re Brady,* 65 Cal.App. 345 [224 P. 252]; *Hamblin* v. *Superior Court,* 195 Cal. 364 [233 P. 337, 43 A.L.R. 1509].

Such contention comes in the face of the fact that appellant chose to be tried in the Alhambra Municipal Court Building in that he complacently acquiesced in the selection of that site when the Honorable Kurtz Kaufman, presiding judge at Pasadena, directed the trial to be held in such building in order to avoid unnecessary delay. By virtue of such acquiescence by appellant and by reason of his failure to show how he was prejudiced, he is in no position now to complain. (*Union Oil Co.* v. *Reconstruction Oil Co.,* 20 Cal.App.2d 170, 181 [66 P.2d 1215]; *People* v. *Pompa,* 192 Cal. 412, 421 [221 P. 198].) The decision in *Hamblin* v. *Superior Court* cited by appellant is authority for the proposition that while section 73f of the Code of Civil Procedure is mandatory it is

not jurisdictional to the point that a session of court in an unauthorized site is null and void. (See, also, *Union Oil Co. v. Reconstruction Oil Co., supra.*)

JUDGE SMITH WAS CORRECTLY DESIGNATED

Appellant contends that although Judge Smith was an "assigned" judge, he was not authorized to conduct the trial, in that appellant did not stipulate to the judge's presiding, and therefore all proceedings are void.

Such contention is vain. Appellant made no objection to Judge Smith at the time of the assignment to Alhambra or at any time during the trial, except that he did object to the judge on the ground of the latter's asserted prejudice, not raised on appeal.

The stipulation by appellant to Judge Smith's acting was not essential to his competency for service. He forgets that a judge may be assigned to try a particular cause or to sit for a specified period of time, while a judge pro tempore may be selected from the bar by stipulation of the parties as provided by section 5 of article VI of the Constitution. Judge Smith was assigned by the Judicial Council from the municipal court as provided by section 1a of article VI. Prior to the adoption of section 1a it had been the practice to select a judge pro tempore by stipulation of the attorneys in the case. After the Supreme Court had held that section 1a was the exclusive method of investing judicial authority (*Martello* v. *Superior Court,* 202 Cal. 400 [261 P. 476]), section 5 of article VI was reinstated so that the selection of a licensed lawyer as judge pro tempore by stipulation of the parties to an action was restored. But that method was in addition, and not contrary, to section 1a. The two sections are in harmony: one method is through the machinery of the Judicial Council; the other by stipulation of the parties. Judge Smith, having been assigned from the municipal court to the superior court, was constitutionally and effectively qualified.

The judgment and the order denying appellant's motion for a new trial are affirmed.

McComb, J., and Fox, J., concurred.

A petition for a rehearing was denied November 30, 1953, and appellant's petition for a hearing by the Supreme Court was denied December 14, 1953. Carter, J., Traynor, J., and Schauer, J., were of the opinion that the petition should be granted.