[Crim. No. 9958.   Second Dist., Div. Four.   Jan. 29, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. FRANK JENKINS, Defendant and Appellant.

Frank Jenkins, in pro. per., and H. Raymond Rager, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Doris H. Maier, Assistant Attorney General, and Ronald W. Tochterman, Deputy Attorney General, for Plaintiff and Respondent.

FILES, P. J.—Defendant was charged in count I with attempted robbery, in violation of Penal Code, sections 211 and 664, and in count II with assault with a deadly weapon, in violation of Penal Code, section 245. Defendant personally and all counsel waived jury trial. The court found defendant guilty as charged in both counts of the information. As to count I no sentence was imposed. As to count II probation was denied and defendant was sentenced to state prison for the term prescribed by law.

The notice of appeal fails to specify the judgment or order from which it is taken, but it will be construed, in defendant's favor, as an appeal from the judgment. (See Cal. Rules of Court, rule 31(b).)

The prosecution's case rests largely upon the testimony of J. C. Holcomb, a taxi driver. Holcomb testified that about 5 a.m. on November 1, 1963, he was driving his cab at Florence and Central Avenue in Los Angeles when defendant flagged him. At defendant's request, Holcomb drove him to a house in the area just west of the Civic Center. When they arrived Holcomb said that the fare was $3.30. Defendant said, " 'Come on, walk up to the house with me and get your money, I don't quite have enough to pay you.' " They went to the house together. Defendant went inside. Holcomb waited outside on the porch until the defendant returned to the door. Defendant opened the door and said, " 'Come on in and get your money.' " Defendant held up a $10 bill and said, " 'Well, you got to give me some change.' " Holcomb asked defendant to turn on the porch light and defendant answered that it did not go on. Thereupon defendant grabbed Holcomb by the arm and tried to pull him into the house. At the same time he was beating Holcomb on the head with a piece of pipe and saying, " 'You said $3.30, I am going to take what you got.' " Holcomb had no weapon of any kind. He did not try to strike defendant, but merely tried to break away from him. After a struggle Holcomb escaped and returned to the taxicab, from which he called the police.

Defendant testified on his own behalf that after he had paid his taxi fare, the driver followed him to his house, demanded more money, knocked defendant down with his fist and then attacked defendant with a knife which had a blade 10 or 12 inches long. Defendant testified that he fought off his attacker and struck him with the pipe in self-defense.

The People produced as witnesses two police officers who testified, without objection, to statements made by defendant

to them at the time of his arrest and shortly afterward. Defendant's counsel called a third police officer and elicited his testimony as to statements made by defendant at the time of his arrest. These statements were all to the effect that Holcomb was the aggressor and that defendant had acted in self-defense. The extrajudicial statements were fully consistent with the testimony given by defendant at the trial and, if believed, would tend to show that defendant's testimony was not a recent fabrication. Defendant does not claim that his rights were violated by the conduct of the officers or by the admission of their testimony into evidence.

The record fails to support defendant's argument that the testimony of the taxi driver is inherently improbable. That defendant struck the victim is conceded. Before an appellate court may reject testimony on the ground that it is inherently improbable, the testimony must assert something that is "physically impossible or so clearly false and unbelievable that reasonable minds may not differ with respect thereto." (*People* v. *Manuel*, 94 Cal.App.2d 20, 23 [209 P.2d 981].) The issue of fact upon which the testimony of the two participants conflicted was as to which was the aggressor. If Holcomb was not telling the truth, the only plausible alternative hypothesis is that he had gone to the doorway to rob defendant. There is nothing physically impossible or inherently improbable in the theory adopted by the trial court that defendant lured the driver to his doorway for the purpose of robbing him. In support of the People's case, there are other circumstances: Holcomb was a man 54 years of age, weighing 140 pounds, while defendant was 29 and weighed 165. Holcomb was severely injured, but defendant sustained not a single bruise (although defendant testified Holcomb had hit him with his fist and knocked him to the ground). Holcomb called the police as quickly as he could escape from the porch, but defendant's first reaction after Holcomb left was to try to clean up the blood on the floor.

There is substantial evidence to support the finding of a specific intent to commit a robbery. Holcomb testified that as he stood in the doorway of defendant's house waiting for his money, defendant said: " 'Come on in here, I am going to take what you got. You said $3.30, I am going to take what you got.' " Defendant then seized the taxi driver's arm, tried to pull him into the house, and then hit him on the head with the iron pipe, according to the testimony. From this the trier

of fact could reasonably infer that robbery was the purpose of the assault.

It was for the trial court to say which man was telling the truth. ▇ This appellate court must assume in favor of the judgment the existence of every fact which the trial judge could reasonably have deduced from the evidence. (*People v. Newland*, 15 Cal.2d 678, 681 [104 P.2d 778].) Judged by this standard, the evidence is unquestionably sufficient.

▇ Defendant contends that the trial court committed prejudicial error in refusing to allow the defense to refresh the recollection of Police Officer Solorza. The defense called Officer Solorza as its witness and established that he was present at defendant's home when defendant was arrested shortly after the events in question. The witness was asked if he observed bloodstains in the house, and he replied that he had observed freshly mopped blood on the floor immediately inside the doorway. Then defense counsel asked, "Did you also observe blood on the wall?" The answer was, "I don't remember any blood on the wall, no, sir." Defense counsel said: "To refresh your recollection, Officer Solorza, I would like, if you would please, to read the preliminary transcript beginning at line 19 on Page 33. . . ."

The People objected and the objection was sustained.

It is not clear from the printed page whether counsel was about to read the transcript to the witness or was asking the witness to read aloud or silently. But if the trial judge had had any doubts about this, he could have directed the witness to read the proffered transcript silently and wait for the next question.

What defense counsel was attempting was a perfectly proper method of refreshing the recollection of a witness who, counsel apparently believed, had a faulty memory. Such a procedure was not subject to the prosecutor's complaint that counsel was "attempting . . . to impeach his own witness." (See *People v. Porterfield*, 186 Cal.App.2d 149, 157 [8 Cal.Rptr. 897]; *People v. Allen*, 47 Cal.App.2d 735, 743 [118 P.2d 927]; Witkin, Cal. Evidence, p. 718; Fricke, Cal. Criminal Evidence (5th ed. 1960) p. 388.)

▇ Defense counsel did not ask to have the preliminary transcript marked for identification, nor did he pursue the subject in any other way. This court thus has no opportunity to learn whether the preliminary transcript contained any reference to blood on the wall which might have served to revive the recollection of the witness. Moreover, if it is assumed that, after the witness had read the transcript, he would

have testified that there was blood on the wall, it is most improbable that such testimony would have affected the outcome of the case. Holcomb testified that he was never inside the defendant's house, while defendant testified that Holcomb had come into the living room and attacked him with a knife. The purpose of eliciting testimony about blood splattered on the wall in the hallway was to cast doubt upon the cab driver's version of the events. The impeachment value of such testimony would have been slight, at best, for it is entirely possible that in the course of the scuffle Holcomb had been pulled far enough into the doorway that his blood splattered on the wall even though he did not think he had been inside. The arresting officers testified, without contradiction, that they found blood on defendant's clothes, blood on the porch, blood on the furniture inside the house, blood on the floor inside the doorway, blood on the iron pipe found in the house, and blood on a mop which defendant himself testified he had used to clean up the floor. There can be no doubt that the victim bled profusely, for the officers found a trail of fresh blood from the defendant's door to the place where the taxicab had been parked. It was a permissible inference that blood in the house had been carried in by defendant on his person and on the mop and the pipe. If the presence of blood in the house tended to corroborate defendant's testimony that the taxi driver had invaded the house, defendant had the benefit of a great deal of uncontradicted evidence to this effect. To have shown, in addition, that there was blood on the wall would have added little. The failure of the trial court to allow counsel to pursue this subject cannot be regarded as having resulted in a miscarriage of justice.

There is no merit in defendant's contention that the trial judge committed error in questioning Holcomb after the attorneys had completed their examination of this witness. The case depended largely upon the credibility of this witness, and the court's interrogation of Holcomb reflects only the court's attempt to make certain that the record contained the whole truth, so far as it could be elicited from that witness. (*Cf. People* v. *Williams,* 200 Cal.App.2d 838, 846 [19 Cal. Rptr. 743]; *People* v. *Lopez,* 124 Cal.App.2d 100, 105 [268 P.2d 171].) The court did not interfere with any examination by counsel. Defendant was allowed to cross-examine further after the court's questioning. Since this was a court trial, there was no problem of a juror's drawing any inferences from the court's conduct.

Moreover, it must be noted that no objection was made in the trial court to the questions asked by the judge. Nor did defendant make a motion to strike any of the answers. ■ A litigant who deems himself aggrieved by questions asked by the trial judge must make his objections known at the time if he expects relief on appeal. (*People* v. *Corrigan,* 48 Cal.2d 551, 556 [310 P.2d 953].)

The Attorney General has argued that the sufficiency of the evidence on the attempted robbery count is not reviewable because, although the trial court found defendant guilty on both counts, no sentence was imposed on the attempt count. The Attorney General argues that where there is no sentence there is no judgment; and since Penal Code, section 1237, provides only for an appeal from the judgment in this case, no appeal is possible. (Cf. *People* v. *Jones,* 36 Cal.2d 373, 375 [224 P.2d 353]; *People* v. *Patello,* 125 Cal.App. 480, 487 [13 P.2d 1068].)

The logic of this argument must be conceded, but it is premised upon the assumption that the proceeding on count I was halted short of judgment. ■ Without doubt, the trial court refused to pronounce a separate sentence on count I because of the prohibition against double punishment in Penal Code, section 654. *People* v. *McFarland,* 58 Cal.2d 748, 762 [26 Cal.Rptr. 473, 376 P.2d 449], points out that section 654 prohibits double punishment, but not double conviction. The sentence which the court pronounced was the single judgment resulting from the two convictions, and both convictions should be reviewable on this appeal. If the conviction was arrived at through legal error, it should not be allowed to stand. The only opportunity this defendant has for a review of alleged errors of law relating to that conviction is by appeal at this time. There is no reason to believe that the Supreme Court intended that the prohibition against multiple sentencing should deprive the convicted man of appellate review of all the convictions which stand against him. Since it seems clear that the court's failure to sentence on count I was merely a means of avoiding a violation of Penal Code, section 654, our conclusion is that the conviction, as such, stands and defendant is entitled to have it reviewed on this appeal.

■ The trial court's failure to pronounce a sentence on count I in this case is in accordance with the current practice of some other trial judges, and for that reason should not pass without comment. Although a refusal to pronounce sentence on more than one count is a way of avoiding a violation

of Penal Code, section 654, it may create a problem of another kind. When the convictions are reviewed on appeal, it sometimes happens that the judgment must be affirmed as to some counts and reversed as to others. If the count on which the defendant was sentenced should be the one which is reversed, the defendant is then left without a valid sentence. Whether the defendant may then be sent back to the trial court and given a new sentence on the counts which were affirmed is a question not free from doubt, in view of the language of Penal Code, sections 1191 and 1202. A proper procedure, which avoids this difficulty, is for the trial court to sentence on all counts and then stay execution of the sentences on all except one count. (See *People* v. *Niles,* 227 Cal.App.2d 749, 755 [39 Cal.Rptr. 11].)

The judgment is affirmed.

Jefferson, J., and Kingsley, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 24, 1965.