[Crim. No. 2222.   Fourth Dist.   July 26, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. DONNIE DOZIER, Defendant and Appellant.

Langford, Langford & Lane and J. Perry Langford for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Anthony M. Summers, Deputy Attorney General, for Plaintiff and Respondent.

WHELAN, J.—Defendant appeals from a judgment finding him guilty of robbery in the first degree and of assault with a deadly weapon. In view of the nature of some of the questions involved, it is well to summarize the testimony of several of the witnesses.

George Whitaker testified that between midnight of August 21, 1964, and 2 a.m. of August 22, while walking to the Fleet Landing, he was hailed at the corner of Fourth and Market in San Diego, California, by the defendant, a male dressed in a woman's long white dress, wearing a fur piece, a black wig and black high-heeled shoes and carrying a woman's handbag. Defendant was a short distance south of Market Street on the east side of Fourth Avenue. Whitaker went to him and was asked by defendant for a dollar to buy a drink. Whitaker refused and turned to walk away. He was grabbed by his sailor's neckerchief from behind; he turned around and again was asked for money, the defendant having produced from his purse a metal object which Whitaker thought was a gun. Defendant struck Whitaker and attempted to take his wallet; defendant got Whitaker down on the sidewalk and started hitting him with the metal object and stamping on Whitaker's head; defendant obtained Whitaker's wallet and began taking everything out of it; Whitaker managed to get up and ran to the corner of Fourth and Market where he encountered police, to whom he related what had happened. In Whitaker's wallet, which was not recovered, there had been $22.

Sherman Robert Wiseman testified that while walking north on Fourth Avenue between Island and Market at about 2 a.m. of August 22, 1964, he saw the defendant slap a sailor; that defendant was in a dress and had hold of the sailor by the front of his blouse and said, "Give me a dollar, you son-of-a-bitch, or I'll kill you."; he next saw the sailor lying on the sidewalk and the person in the dress was stamping on him; he also saw something glinting in the hand of the person in the dress, which he had also noticed before the sailor went down; he thought the object was a knife; he also saw the person in the dress pulling papers out of something and

flipping them; he thought the person in the white dress was a woman; he approached the police, whom he accompanied to the scene of the described events, where the police picked up the papers lying about; that some 10 minutes after seeing the attack on the sailor he saw the person in the white dress alongside a police car on Fifth Avenue between Island and Market and pointed him out to the police as the attacker. Wiseman then saw the person in the white dress inside the same police car and identified that person as the attacker; Wiseman had seen the same person earlier in the evening before the assault and believed the defendant to be that person.

Frank Douglas Price, a sailor, while on the east side of Fourth Avenue and on the north side of Market Street at about 2 a.m. on August 22, saw a commotion on Fourth Avenue, about one-quarter block south of Market Street. He walked toward that point until he reached a spot some 5 or 10 feet from where a person in a woman's white dress and high-heeled shoes had hold of a sailor by his uniform and had what appeared to be a gun in one hand. He took the person to be a woman and heard this person say, ''I'll shoot ya if you don't give me some money''; not wishing to run the risk of gunfire, Price walked back to the corner of Fourth and Market. He observed the defendant (*sic*) beating the sailor with the gun barrel and saw the sailor go down after awhile. Then the defendant (*sic*) started stamping on the sailor, all the time demanding money. When there didn't seem to be any more resistance, the person in the dress reached down and took a wallet from the sailor and strewed papers all over the street. The person in the dress then walked south on Fourth Avenue to Island Avenue and turned the corner to go east on Island. The sailor ran around the corner of Fourth and Market. There was blood on his uniform. Some 15 minutes later, Price saw the defendant in a police car which was facing north on the east side of Fifth Avenue between Island and Market and identified the defendant seated in the car as the assailant of the sailor.

Terrence Paul Conlin, a San Diego police officer, at about 2:10 a.m. on the morning of August 22, 1964, saw the defendant hobbling in an easterly direction on the north side of Island Avenue between Fourth and Fifth Avenues; one of the defendant's shoes had the heel missing, which was the cause of the hobbling; the officer, who was accompanied by

Officer Davis, learned by radio that there had been a disturbance and met the witness Wiseman in the company of another officer; Conlin, along with Wiseman, went to the scene of the assault where Conlin picked up Whitaker's identification papers; the officers then proceeded to the Jolly Inn on the east side of Fifth Avenue between Island and Market, where they saw the defendant standing in the doorway; they placed defendant under arrest and searched his handbag, in which they found a right angled drill chuck which had on it what was later identified as human blood; there was also blood on the dress worn by the defendant and on one of his shoes there was blood which was later identified as human blood; at the time of his arrest, the defendant did not have a heel on either shoe; also in the purse were a $5.00 and three $1.00 bank notes.

Officer Conlin testified also, over objection by the defendant, as follows: "Yes, I asked the defendant Dozier if he had contacted the victim, and I pointed toward the victim, at any time earlier in the evening. He said, yes, he had. He mentioned that he had been with this person earlier in the evening, and that the victim, thinking that he was a woman, had made advances. Dozier then told me that he told the victim that he was a boy, and that he should go to the Zebra Club or the 552 Club, which is located in the 500 block of Fifth, if he wanted any activity with a person of the opposite sex. He said that the defendant—or the victim then left. . . .

"
.          .          .          .          .          .          .          .          .          .          .

". . . when I made reference to what appeared to me to be blood on Dozier's face and hands, and on the right-angle drill chuck, and the shoes in the area of the heels, he stated that it had come from the same victim who had bumped into him later when he had met him over in the 400 block—or the block of Fourth.

"
.          .          .          .          .          .          .          .          .          .          .

"I asked him if he had assaulted this individual with the drill chuck, and he said, 'No.'" About 15 minutes had elapsed from the time when Conlin first saw defendant and his later seeing defendant at the door of the Jolly Inn.

Appellant's testimony in his own defense was to the effect that from time to time during the evening Whitaker had solicited him to go to a room, that there was an issue over a dollar which Whitaker owed for a drink, and that Whitaker had attacked appellant, who merely defended himself. He testified also that Whitaker threatened him with a switch-

blade knife; that Whitaker also had the drill chuck on his person, that defendant kicked the knife out of Whitaker's hand and knocked the drill chuck out of Whitaker's hand; that he had kicked Whitaker who fell down and got up and fell again when defendant struck him; that defendant knocked Whitaker down a third time and began to "stomp" him; that he did not know how the drill chuck got in his purse, that he did not put it there; and that he did not take any of Whitaker's money; that at the time of his arrest the heels were on both of his shoes.

The trial court found defendant guilty of robbery in the first degree because he was armed with a deadly weapon at the time of the offense. Defendant was not charged in the information with having been armed with a deadly weapon. Appellant assigns fixing of the degree as first degree robbery as error. Respondent concedes this point.

The trial judge pronounced judgment only on the robbery conviction. Appellant contends that in reviewing a conviction on a charge of robbery this court should not review the propriety of the conviction of assault with a deadly weapon. It is proper, however, to review both convictions on this appeal. (*People* v. *Jenkins,* 231 Cal.App.2d 928, 934 [42 Cal.Rptr. 373].)

The statements made by defendant, testified to by Officer Conlin, were admitted over defendant's objection based upon *Escobedo* v. *Illinois,* 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977]; and *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361] in which latter case a rehearing had been granted by the California Supreme Court without having been finally decided at the time of the trial. ▌ The officer testified directly that he did not advise defendant of his rights to counsel and to remain silent. Although respondent argues otherwise, it appears that the officers were satisfied as to the identity of defendant as the assailant of Whitaker at the time of these conversations and that the various elements mentioned in *People* v. *Dorado, supra,* 62 Cal.2d 338, existed. It was error, therefore, to admit the statements into evidence. Those statements did not constitute a confession and in general they were of an exculpatory nature. An examination of the entire cause, including the evidence, to determine if the introduction of the statements caused prejudice to defendant, in our opinion, does not disclose such prejudicial effect. There is no reasonable probability that the court would have reached a result more favorable to defend-

ant if the statements had been excluded. (Cal. Const. art. VI, § 4½; *People* v. *Watson,* 46 Cal.2d 818, 836 [299 P.2d 243]; *People* v. *Hillery,* 62 Cal.2d 692, 712-713 [44 Cal.Rptr. 30 401 P.2d 382].)

At the trial, the evidence of Whitaker was not presented by him in person but through a reading of the transcript of testimony given at the preliminary hearing. That was done over defendant's objection and he now contends, on the basis of *Pointer* v. *Texas,* 380 U.S. 400 [85 S.Ct. 1065, 13 L.Ed.2d 923], and *Motes* v. *United States,* 178 U.S. 458 [20 S.Ct. 993, 44 L.Ed. 1150], that the use of the transcript was a denial of his constitutional right under the Sixth Amendment of the federal Constitution to be confronted with the witnesses against him.

*Pointer* holds that the right guaranteed by the Sixth Amendment is made obligatory upon the states under the equal protection clause of the Fourteenth Amendment. *Motes* held that where a witness fails to testify at a trial when his absence was not procured by the defendant but was the result of the negligence of the prosecution, the transcript of his testimony could not be used and that its use was violative of the right guaranteed by the Sixth Amendment.

In *Pointer,* the witness had left the State of Texas for permanent residence in California, but the defendant, who was not represented by counsel at the preliminary hearing, did not cross-examine the witness or attempt to do so. Justice Black, the author of the opinion, stated at pages 1069-1070 [85 S.Ct.] : "The case before us would be quite a different one had Phillips' statement been taken at a full-fledged hearing at which petitioner had been represented by counsel who had been given a complete and adequate opportunity to cross-examine. Compare *Motes* v. *United States, supra,* 178 U.S., at 474, 20 S.Ct., at 999. There are other analogous situations which might fall within the scope of the constitutional rule requiring confrontation of witnesses. The case before us, however, does not present any situation like those mentioned above or others analogous to them."

In *Motes,* the testimony of the absent witness had been taken at a hearing at which two of the defendants had not yet had any charges brought against them; the witness was himself one of the defendants and had been in the custody of the U.S. Marshal who released him from custody and turned him over to the care of another witness at the trial; the missing witness had been in the courthouse a half hour before

he was called and failed to appear. The court held that his absence was the result of negligence of the U.S. Marshal. It also held as to one defendant who testified at the trial to facts that amounted to an admission of his guilt that the use of the transcript of the testimony of the missing witness could not be considered prejudicial; and as to that defendant the judgment was affirmed but was reversed as to all the other defendants.

Although *Pointer* is the first decision of the U.S. Supreme Court to hold the constitutional guarantee of the Sixth Amendment of confrontation to be obligatory upon the several states, the applicability of the Sixth Amendment has been considered by the California courts in passing upon the question whether testimony given at a preliminary hearing might be used at a trial where a witness could not "with due diligence be found within the state," as permitted by section 686, subdivision 3, Penal Code. Indeed, section 686 provides that the defendant is entitled to be confronted with the witnesses against him in the presence of the court, with exceptions in certain situations, one being where it is "satisfactorily shown to the court" that the witness cannot with due diligence be found within the state. ■ While the California Constitution does not contain a provision similar to that of the federal Constitution, it recognizes the right of confrontation as being a part of due process, where in section 13 of article I it provides that the Legislature shall have power to provide for the taking, in the presence of the party accused and his counsel, of depositions of witnesses in criminal cases.

Subdivision 3 of section 686, Penal Code, has been held not to be repugnant to the Sixth Amendment to the Constitution of the United States. (*People* v. *Ashley,* 42 Cal.2d 246, 272-273 [267 P.2d 271]; *People* v. *Hermes,* 73 Cal.App.2d 947, 955 [168 P.2d 44].)

The question was considered also in *People* v. *Oiler,* 66 Cal. 101 [4 P. 1066], where the court observed that the power to receive such testimony has been held to be properly exercised in the states whose constitutions secure to an accused person the right to be confronted face to face with the witnesses against him. (Citing *People* v. *Restell,* 3 Hill 289; *State* v. *Johnson,* 12 Nev. 121; *Commonwealth* v. *Richards,* 18 Pick. 434 [29 Am.Dec. 608]; *Summons* v. *State,* 5 Ohio St. 325.)

■ It is recognized that in determining whether a right under the federal Constitution has been denied, the standard

to be applied is that fixed by decisions of the federal courts. (*Ker* v. *California,* 374 U.S. 23 [83 S.Ct. 1623, 10 L.Ed.2d 726]; *People* v. *Bilderbach,* 62 Cal.2d 757 [44 Cal.Rptr. 313, 401 P.2d 921].)

So far the reported decisions of the federal courts have approved only the reading of the transcript of the evidence of a deceased witness (*Mattox* v. *United States,* 156 U.S. 237 [15 S.Ct. 337, 39 L.Ed. 409]; *United States* v. *Macomb,* 5 McLean 286 [Fed. Cas. No. 15702]); or the transcript of a witness whose absence probably has been procured by defendant. (*Reynolds* v. *United States,* 98 U.S. 145 [25 L.Ed. 244].)

However, the United States Supreme Court denied certiorari in *McBride* v. *Alaska* (1963) 374 U.S. 811 [83 S.Ct. 1702, 10 L.Ed.2d 1035].) The Supreme Court of Alaska had affirmed a judgment of conviction in which an electronically-recorded transcript of the testimony of an absent witness had been presented to the jury, over objection that the Sixth Amendment of the federal Constitution was thereby violated. (*McBride* v. *State* (Alaska) 368 P.2d 925.)

In *Pointer,* the Supreme Court had the opportunity, had it thought it proper to do so, to reverse upon the ground that the testimony of a living witness given at an earlier hearing may not be used merely because of the absence of the witness from the state. It did not do so.

It may be assumed therefore that the Supreme Court of the United States will not hold that the sole basis for the permitted use of the transcript of a witness who has been cross-examined is the absolute inability to call him back from the grave, or the probable complicity in his absence on the part of the defendant.

Was there a sufficient predicate for the use of the transcript of the testimony given at the preliminary hearing? The question whether it has been satisfactorily shown to the court that the prosecuting witnesses could not with due diligence be found within the state was one primarily addressed to the trial judge to be determined by him from the evidence presented. It is a question of fact, the determination of which by the trial judge will not be interfered with unless the appellate court is satisfied that the trier of fact abused the discretion lodged in him in determining that due diligence had been used and that the witness could not be found. (*People* v. *Hermes, supra,* 73 Cal.App.2d 947, 955.)

In the instant case, the preliminary hearing was held on

September 15, 1964; prior to that time Whitaker told the deputy district attorney who handled the preliminary hearing that he did not expect to be transferred from his duty post with the Navy and that there seemed to be no problem about his attendance as a witness; the information was filed in the superior court on September 25; on October 6 the defendant was arraigned and the trial date set for November 9; Whitaker was attached to a ship which had been at San Diego; the subpoena was issued and placed by the deputy district attorney who presented the case for the People at the trial in the hands of the San Diego County Sheriff for service; the sheriff learned that the ship had left for Long Beach so that he was unable to serve the subpoena in San Diego County; the district attorney then obtained a subpoena which was placed in the hands of the Sheriff of Los Angeles County at a Long Beach substation, who after several days had not been able to effect service, and discovered that the witness had been detached from service on October 2 and had given a Chicago forwarding address; thereupon the district attorney sent a telegram to the commanding officer of the ship requesting information and received an answer stating that Whitaker had been released to inactive duty on October 2 and that his forwarding address was 313 West Oak Street, Chicago, Illinois; an attorney who represented Whitaker in a civil action communicated to the deputy district attorney who had handled the preliminary hearing the information that Whitaker had gone to Chicago. That deputy district attorney conveyed the information to the deputy district attorney who presented the People's case at the trial, who spoke by telephone to Whitaker's attorney and was told by the attorney that Whitaker was now living in Chicago according to a letter that the attorney had recently received; the attorney gave to the deputy district attorney the same address that had been furnished by the commanding officer of the ship, 313 West Oak Street, Chicago 10, Illinois; the attorney had received the letter from Whitaker in Chicago on October 30. On November 2, the district attorney sent a telegram addressed to Whitaker at the Chicago address, in which he said that he understood from Whitaker's attorney that: "... you now live in Chicago and will not be in California before mid-November, 1964.[1] Must have confirmation these

---

[1]Whitaker's attorney did not testify that his client had written that he would return to California, but that he intended to pursue his civil action.

facts to use transcript your testimony in Preliminary Hearing in Dozier's criminal trial beginning November 9. Please reply collect. . . .''

The district attorney, on November 4, had a telegram from Western Union stating that the telegram addressed to Whitaker ''remains undelivered''; the next day Western Union sent a telegram to the district attorney stating that the telegram to Whitaker was ''now delivered.''

Appellant presents these arguments: that the court did not make it clear whether it believed Whitaker to be out of the state or whether it believed that the district attorney had exercised due diligence to procure Whitaker's presence; that if it was believed that Whitaker was coming to California, the district attorney should have requested a continuance until Whitaker might be here; that Whitaker should have been served with a subpoena before he left California for Illinois; that he should have been brought from Illinois under the provisions of the Uniform Act to Secure the Attendance of Witnesses from Without the State in Criminal Cases, which was enacted in 1937.

It is apparent that if Whitaker left California on October 2, a subpoena could not have been served upon him to appear on November 9 for the reason that the trial date was not set until October 6.

Nor is it required that diligence be exercised to retain a witness in the state. (*People* v. *Carswell,* 51 Cal.2d 602 [335 P.2d 99].)

A showing of absence from the state satisfies the requirement of due diligence. (*People* v. *Carswell, supra; People* v. *Hanz,* 190 Cal.App.2d 793, 799 [12 Cal.Rptr. 282]; *People* v. *McDaniel,* 157 Cal.App.2d 492, 499 [231 P.2d 497]; *People* v. *Padilla,* 81 Cal.App. 528, 532 [254 P. 585].)

While the deputy district attorney stated that he had not shown that Whitaker was out of the state, there was a sufficient showing of Whitaker's absence from the state at the date of the trial. The telegram to Whitaker apparently was delivered on November 5, and the trial was held on Monday, November 9. The showing of absence two days before the trial was considered to satisfy the requirement of absence on the date of trial in *People* v. *Carswell, supra,* 51 Cal.2d 602, and in *People* v. *Perez,* 170 Cal.App.2d 27 [338 P.2d 255]. In *People* v. *Padilla, supra,* 81 Cal.App. 528, evidence that the witness was absent from the state ''about a week'' before the trial was held to be a sufficient showing.

■ The existence of permissive legislation to obtain the presence of witnesses from out of state is not a requirement that the machinery thus provided be used in every instance. (*People* v. *Daboul,* 234 Cal.App.2d 800 [44 Cal.Rptr. 744] [June 7, 1965].)

The question essentially is one of the sufficiency of the showing of due diligence. (*People* v. *Poo On,* 49 Cal.App. 219, 223 [192 P. 1090].) ■ We find no abuse of discretion on the part of the trial court in determining that there had been an exercise of due diligence to produce the absent witness, based not only upon the fact of the witness' absence from the state but on the persistent effort of the district attorney to procure the presence of the witness before it was known that he had left the state.

The prosecution was not required to ask for a continuance of the trial to await the possible return to the state of the witness, whose return was at best a matter of conjecture. ■ It is not, of course, the burden of the defendant to secure the presence of the state's witnesses to meet the constitutional requirement of confrontation. But if that right is not denied the defendant because he has in fact cross-examined a witness who then leaves the state, it is still within the power of the defendant to seek, through the machinery provided, the return of the absent witness. The defendant here made no such attempt.

The appellant in the case at bench was represented at the preliminary hearing by counsel who represented him at the trial and on this appeal. Counsel cross-examined Whitaker at considerable length and without obstacle or curtailment of the right. ■ ". . . due process is not denied the accused by the introduction of testimony taken at the preliminary hearing, in his presence, where he cross-examined the witness. . . ." (*People* v. *Hanz, supra,* 190 Cal.App.2d 793, 799.)

The judgment of conviction of robbery in the first degree is ordered amended to a judgment of conviction of robbery in the second degree; as so amended the judgment is affirmed and the conviction of assault with a deadly weapon likewise is affirmed.

Brown (Gerald), P. J., and Coughlin, J., concurred.