[No. E011690. Fourth Dist., Div. Two. June 22, 1994.]

THE PEOPLE, Plaintiff and Respondent, v.
ANTHONY WATKINS et al., Defendants and Appellants.

**[Opinion certified for partial publication.†]**

†This opinion is certified for partial publication pursuant to rules 976(b) and 976.1 of the California Rules of Court except parts III.B., C., D. and E.

**COUNSEL**

Richard Schwartzberg and David Joseph Macher, under appointments by the Court of Appeal, for Defendants and Appellants.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Holly D. Wilkens and Rhonda L. Cartwright-Ladendorf, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**TIMLIN, J.—**

## I

### PROCEDURAL BACKGROUND

The case against defendants Anthony Watkins (Watkins) and Marvin Patrick Munford (Munford) was given to the jury on the following charges:

| Count | Defendant(s) | Offense | Sentence Enhancement Allegation(s) |
|---|---|---|---|
| I | Watkins Munford | First degree residential robbery of Sharon Parr (Parr) (Pen. Code, § 211; see § 212.5, subd. (a)) | Watkins: armed with a firearm (Pen. Code, § 12022, subd(a)(1)) Munford: personal use of a deadly or dangerous weapon (Pen. Code, § 12022, subd. (b)) |
| II | Watkins Munford | First degree residential robbery of Ramona Fries (Fries) (Pen. Code, § 211; see Pen. Code, § 212.5, subd. (a)) | Watkins: armed with a firearm (Pen. Code, § 12022, subd. (a)(1)) Munford: personal use of a deadly or dangerous weapon (Pen. Code, § 12022, subd. (b)) |
| III | Watkins Munford | First degree residential burglary (Pen. Code, § 459; see Pen. Code, § 460, subd. 1) | Watkins: armed with a firearm (Pen. Code, § 12022, subd. (a)(1)) Munford: personal use of a deadly or dangerous weapon (Pen. Code, § 12022, subd. (b)) |

| IV | Watkins | Assault on Frank Beanblossom (Beanblossom) with a deadly weapon (Pen. Code, § 245, subd. (a)(1)) |
| V | Munford | Assault on Beanblossom with a deadly weapon (Pen. Code, § 245, subd. (a)(1)) |
| VI | Watkins | Assault on Parr with force likely to cause great bodily injury (Pen. Code, § 245, subd. (a)(1)) |

Following trial, the jury found Watkins and Munford guilty as charged on all counts. It also found the sentence enhancement allegations that Watkins was armed with a firearm not true, but found the sentence enhancement allegations that Munford used a deadly weapon true.

The court denied Watkins probation, without stating any reasons for doing so. It determined count I, the robbery from Parr, to be the principal term of imprisonment (term) and imposed the upper term of six years. On count II, the robbery from Fries, it imposed a one-year and four-month term (one-third the midterm of four years). Imposition of sentence on count III, the burglary, was stayed. On count IV, the assault on Beanblossom, it imposed a one-year term (one-third the midterm of three years). On count VI, the assault on Parr, it imposed one year (one-third the midterm of three years). It ordered all subordinate terms to be served consecutively to each other and to the sentence on count I. Thus, it sentenced Watkins to a total nonstayed prison term of nine years, four months, plus a restitution fine of $5,000.

The trial court likewise denied Munford probation. It determined count I, the robbery from Parr, to be the principal term and imposed the upper term of six years, plus a one-year consecutive term for the deadly weapon use enhancement. On count II, the robbery from Fries, it imposed a one-year and four-month term (one-third the midterm of four years), plus a deadly weapon use enhancement of four months (one-third of a year), to be served consecutively. Imposition of sentence on count III, the burglary, was

stayed.[1] On count V, the assault on Beanblossom, it imposed a three-year term (the midterm), to be served concurrently. Thus, it sentenced Munford to a total nonstayed prison term of eight years, eight months, plus a restitution fine of $5,000.

The abstract of judgment, however, indicates that the four-month enhancement sentence on count II was stayed, and therefore that Munford's total nonstayed sentence was eight years, four months.

Watkins filed a timely appeal and contends the trial court committed two sentencing errors: (1) It failed to state any reason for denying probation, and (2) after imposing prison sentences for the robbery of Parr (count I) and assault on Parr (count VI), it failed to stay execution of the sentence on count VI, in violation of Penal Code section 654.[2]

Munford filed a timely appeal and asserts the following trial court errors: (1) It erred in denying Munford's motion under section 1538.5 to suppress evidence of his arrest and his postarrest statements to law enforcement officials because they were obtained as a result of his unlawful arrest, and (2) after imposing sentences on the personal use of a deadly weapon enhancement as to counts I and II, it failed to stay execution of the sentence on the enhancement as to count II, in violation of the *Culbreth* rule.

---

[1]Although requiring a defendant to serve a sentence on each of several counts in a certain case might constitute multiple punishment in violation of Penal Code section 654 (see generally part III.C., *post*), the trial court should *impose* a sentence on all counts. If section 654 prohibits the service of sentence on certain counts, the sentencing court must then stay *execution* of sentence on those counts. (*People* v. *Pearson* (1986) 42 Cal.3d 351, 359-361 [228 Cal.Rptr. 509, 721 P.2d 595]; *People* v. *Jenkins* (1965) 231 Cal.App.2d 928, 934-935 [42 Cal.Rptr. 373].) That way, if the defendant's conviction on the count for which the sentence is stayed is reversed on appeal, he or she can then be required to serve a sentence on a nonreversed count for which a stay of execution had been ordered. (See, generally, 3 Witkin & Epstein, Cal. Criminal Law (2d ed. 1989) Punishment for Crime, § 1393, pp. 1643-1645.)

As the court in *People* v. *Cheffen* (1969) 2 Cal.App.3d 638, 641-642 [82 Cal.Rptr. 658] stated: "Upon conviction it is the duty of the court to pass sentence on the defendant and impose the punishment prescribed. [Citations.] Pursuant to this duty the court must either sentence the defendant or grant probation in a lawful manner; it has no other discretion. [Citations.] Where sentence is imposed upon multiple convictions the trial court, in order to avoid the double punishment forbidden by Penal Code section 654, may stay execution of the less severely punishable offense, pending an appeal or during service of any term fixed by the Adult Authority for the more severely punishable offense, the stay to become permanent at the completion of service of any sentence for the more severely punished offense. [Citations.]" (See also *People* v. *Eberhardt* (1986) 186 Cal.App.3d 1112, 1122 [231 Cal.Rptr. 387].)

Here, the trial court erred when it failed to impose any sentence whatsoever as to either defendant on count III. However, it is harmless error as we are affirming both defendants' convictions on all counts. (*People* v. *Reed* (1969) 270 Cal.App.2d 37, 50 [75 Cal.Rptr. 430]; *Jenkins, supra,* 231 Cal.App.2d at pp. 934-935.)

[2]All further statutory references shall be to the Penal Code unless otherwise stated.

## II

### FACTUAL BACKGROUND

About 11 p.m. on December 18, 1991, defendants Watkins and Munford (collectively defendants) invaded Parr's home in Big Bear Lake. Munford was armed with a knife.[3] Fries, house-sitting for Parr, was alone in the home. Defendants demanded drugs and money; when Fries denied having any, Watkins pushed her to the floor and put his foot on her back. Munford told Fries, "shut up, you bitch, or I will slice your throat." Defendants verbally abused Fries by referring to her as a "slut," a "whore," and "white trash." They rifled her purse and waist pack.

Parr then returned home, accompanied by Beanblossom. As Watkins attacked Parr upon her entry into the house, Munford kept Fries down, by stepping on her face. Watkins forced Parr into a bedroom, threw her to the floor, then beat and kicked her. He again demanded drugs and money. He said, "I will kill you, white bitch. I will cut you up."

Meanwhile, Beanblossom also had entered the house and Munford chased Beanblossom, who retreated into a bathroom. Fries, momentarily alone, started to dial 911 on the telephone. Munford noticed this, and "slugged [her] in the face." Munford then fetched Parr; he made Parr lie "cross-wise" over Fries, then sat on top of Parr. He asked Parr where her drugs were. He "pound[ed]" Parr on the back and ran his knife over her, pricking her back and cutting her foot. Parr ended up with fractured ribs. Fries tried to call 911 again. Munford, however, noticed this and punched Fries in the face. He then cut the telephone cord.

Meanwhile, Watkins pulled Beanblossom from the bathroom. They struggled; Watkins hit Beanblossom in the head with a metal kitchen pan. One of Beanblossom's molars was knocked loose, his eardrum was injured, and a muscle in his eye was torn. Watkins took Beanblossom into the same room with Parr and Fries and forced him to kneel. He next tied Beanblossom with a portion of the telephone cord. Watkins or Munford tied Parr's hands.

During this episode Munford mused, "I feel like slicing me some bitches." Watkins agreed, "Yeah, I feel like plugging them, too." He added, "Let's get on with the show."

As a result of Fries's aborted 911 calls, two sheriff's deputies came to the house while defendants were still there. Defendants turned out all of the lights and then ran out, taking Fries's wallet and her jewelry bag and zipper

---

[3]Although there was testimony that Watkins was armed with a gun, the jury found to the contrary.

bag, both containing jewelry, and Parr's overnight case and purse. One deputy chased Watkins and one deputy chased Munford, but both defendants successfully fled on foot.

About 2 a.m., one of the deputies encountered a truck in which Watkins was riding with two women, Maya Gotlieb and Katherine Wallington; he arrested all three.[4] About 7 a.m., Munford was arrested, under circumstances to be discussed below.

## III

### DISCUSSION

A. *The Arrest of Munford in His Motel Room*

Munford contends that the deputy sheriffs arrested him unlawfully in that (1) they lacked probable cause to do so, (2) they lacked a warrant for his arrest, and there was no applicable exception to the warrant requirement, and (3) they failed to comply with the "knock-notice" requirement of section 844.

The following facts are based on the evidence before the trial court when it ruled on Munford's motion to suppress (motion), unless otherwise indicated. Such evidence consisted solely of Deputy Sheriff Lonny Siebert's testimony.

When the sheriff's deputies arrived at Parr's house, two men (later identified as Munford and Watkins) ran out of the house and escaped. Deputy Siebert, who was on the front porch, saw them when they were still inside the house but already running. They ran out a side door, then past Siebert to get to a gate. When Munford was only eight feet away from Siebert, he stopped suddenly. Siebert saw that Munford was wearing a blue shirt under blue overalls, "like a jump suit." Watkins ran past Munford and Siebert chased him. Watkins, however, eluded him. About 2 a.m., sheriff's deputies stopped a car in which Watkins, Gotlieb and Wallington were riding and took all three into custody. Siebert transported Gotlieb and Wallington to the sheriff's station and then booked them. Thereafter, as a matter of routine, he inspected underneath the back seat of his patrol car where Gotlieb and Wallington had sat while being transported to the sheriff's station. He found a "motel type key" bearing the number "3."

Detective Foreman and Deputy Buma told Siebert that Munford was at the Hillcrest Lodge, a motel. All three of them went there. They had no arrest or

---

[4]According to Munford's subsequent statements to law enforcement officers, Wallington suggested robbing Parr's house and acted as the getaway driver.

search warrant. They arrived about 7 a.m., and went directly to room 3. Siebert put the key in the doorknob lock. It fit; he turned the knob, but did not open the door. Instead, one of the officers knocked on the door. A woman opened it. Inside, Siebert saw a man lying on the bed. As the man sat up, Siebert recognized him as the man he had seen escaping from Parr's house. He was wearing the same blue shirt and blue overalls. This man was defendant Munford.

The deputies were concerned that Munford might attempt to flee. Moreover, since Watkins had not had any weapons when he was arrested, they believed that Munford might have the gun and knife reported to have been used in the robberies. Assertedly for these reasons, the police entered the room and Siebert "immediately" arrested Munford.

During trial, Deputy Seibert testified that when Munford was being booked, he commented, "I bet you guys cracked up when I hit the fence." Detective Allan Foreman testified at trial that about 7:30 a.m. on December 18, 1991, he duly *"Mirandized"* Munford and interviewed him. Munford made substantial inculpatory admissions regarding the charges against him. Munford's statements at the police station, both when booked and when interviewed, were introduced into evidence against him.

1. *Probable Cause to Arrest.*

█ Munford argues, albeit briefly, that the police lacked probable cause to arrest him. "Cause to arrest exists when the facts known to the arresting officer would lead a person of ordinary care and prudence to entertain an honest and strong suspicion that the person arrested is guilty of a crime." (*People* v. *Price* (1991) 1 Cal.4th 324, 410 [3 Cal.Rptr.2d 106, 821 P.2d 610].)

Siebert had seen Munford and Watkins as they escaped from the scene of the crime. From interviewing the victims, Siebert also knew that Munford had committed several felonies. At that point, Siebert had ample probable cause to arrest Munford, although he did not yet know Munford's last name or where Munford might be found.[5]

2. *Warrantless Entry of a Home to Arrest an Occupant.*

█ "[W]arrantless arrests within the home are per se unreasonable in the absence of exigent circumstances." (*People* v. *Marquez* (1992) 1 Cal.4th 553,

---

[5]Munford may be arguing that the police lacked reasonable grounds to believe Munford was in room 3, and therefore their entry to arrest him was improper under section 844. We discuss Munford's contentions regarding the "knock-notice" provisions of section 844 in part III.A.3., *post.*

566 [3 Cal.Rptr.2d 710, 822 P.2d 418]; accord *Payton* v. *New York* (1980) 445 U.S. 573, 589-590 [63 L.Ed.2d 639, 652-653, 100 S.Ct. 1371].) A hotel or motel room is treated as a "home" for purposes of this rule. (*People* v. *Williams* (1988) 45 Cal.3d 1268, 1297 [248 Cal.Rptr. 834, 756 P.2d 221].)

 Munford argues that here there were no exigent circumstances justifying the officers' immediate entry into the motel room to arrest him because there was no reason at that time to believe that he was about to destroy evidence, be a substantial threat to others, or escape; to the extent that his escape was a concern, the police should simply have placed the motel under surveillance until they could obtain an arrest warrant. Munford also argues, citing *United States* v. *Rosselli* (7th Cir. 1974) 506 F.2d 627, that compliance with the warrant requirement was not excused by any exigency that resulted when, instead of obtaining a warrant, the police knocked on the door and discovered Munford, after a female occupant opened the door, because such an exigency " 'of the "do-it-yourself" variety' " does not permit a warrantless entry. (*People* v. *Shuey* (1975) 13 Cal.3d 835, 849 [120 Cal.Rptr. 83, 533 P.2d 211], quoting *Shuey* v. *Superior Court* (1973) 30 Cal.App.3d 535, 541 [106 Cal.Rptr. 452].)

"Doorway arrests"—where police without an arrest warrant knock on a door, then arrest the person who opens it—have been the subject of numerous cases, with widely differing results partly attributable to their particular facts. (See *United States* v. *McCraw* (4th Cir. 1990) 920 F.2d 224, 228-230 and 229-230, fn. 5 [warrantless arrest inside hotel room unconstitutional where defendant opened door halfway in response to officers' knock, then tried to shut it], and cases cited; *State* v. *Morse* (1984) 125 N.H. 403 [480 A.2d 183, 185-187], and cases cited.) There are several unique factual wrinkles here, such as it was Munford's girlfriend, not Munford himself, who opened the door.[6]

We, however, need not resolve this constitutional question and we will assume for the sake of argument that the warrantless entry to arrest Munford in his motel room was unconstitutional.

But, with such an assumption, it does not follow that Munford's motion to suppress his subsequent statements to the police should have been granted. Where there is probable cause to arrest, the fact that police illegally enter a home to make a warrantless arrest neither invalidates the arrest itself nor requires suppression of any postarrest statements the defendant makes at the police station. (*People* v. *Marquez*, *supra*, 1 Cal.4th 553, 568-569.)

---

[6]It appears that the trial court's reasoning in denying the motion was that Munford was in "plain view" when the motel room door was opened and the officers observed him inside the room. Therefore, they had the right to arrest him (seize his body) in the room.

"The United States Supreme Court considered a similar situation in *New York* v. *Harris* (1990) 495 U.S. 14 [109 L.Ed.2d 13, 110 S.Ct. 1640], where police, without a warrant but with probable cause, arrested Harris in his apartment. The court noted that the purpose of the warrant requirement for an arrest in the home is to protect the home. Thus anything incriminating that the police gathered from arresting Harris in his home, rather than elsewhere, must be suppressed. The court refused to require suppression of statements made at the police station, explaining: 'Nothing in the reasoning of that case [*Payton* v. *New York, supra,* 445 U.S. 573] suggests that an arrest in a home without a warrant but with probable cause somehow renders unlawful continued custody of the suspect once he is removed from the house. There could be no valid claim here that Harris was immune from prosecution because his person was the fruit of an illegal arrest. [Citation.] Nor is there any claim that the warrantless arrest required the police to release Harris or that Harris could not be immediately rearrested if momentarily released. Because the officers had probable cause to arrest Harris for a crime, Harris was not unlawfully in custody when he was removed to the station house, given Miranda warnings and allowed to talk. For Fourth Amendment purposes, the legal issue is the same as it would be had the police arrested Harris on his door step, illegally entered his home to search for evidence, and later interrogated Harris at the station house. Similarly, if the police had made a warrantless entry into Harris' home, not found him there, but arrested him on the street when he returned, a later statement made by him after proper warnings would no doubt be admissible.' (*Id.* at p. 18 [109 L.Ed.2d at pp. 20-21].)" (*Marquez, supra,* 1 Cal.4th at pp. 568-569, brackets in *Marquez.*) The federal constitutional analysis of *Harris* also governs under the California Constitution. (*Marquez, supra,* 1 Cal.4th at p. 569.)[7]

■ Ordinarily, the prosecution cannot justify a search or seizure on appeal on a theory that was not presented to the trial court. (*Green* v. *Superior Court* (1985) 40 Cal.3d 126, 137 [219 Cal.Rptr. 186, 707 P.2d 248]; *People* v. *Miller* (1972) 7 Cal.3d 219, 227 [101 Cal.Rptr. 860, 496 P.2d 1228].) Indeed, not even the appellate court itself can raise a new Fourth Amendment theory sua sponte. (*Mestas* v. *Superior Court* (1972) 7 Cal.3d 537, 542 [102 Cal.Rptr. 729, 498 P.2d 977]; *People* v. *Riegler* (1984) 159 Cal.App.3d 1061, 1065 [206 Cal.Rptr. 223].)

This rule is subject to exceptions, however. It does not apply if the considerations that give rise to it are absent. "The obvious reason for th[e]

---

[7]Munford argues that "the evidence flowing from the arrest should have been excluded" and hence the trial court erroneously denied the suppression motion. For some unknown reason, Munford does not cite or discuss *Harris* and *Marquez.* Neither does the prosecution. Nevertheless, the issue of whether suppression was required if the manner of the arrest was unconstitutional has been "proposed" and "briefed" by a party to the proceeding and supplemental briefing is not necessary. (See Gov. Code, § 68081.)

rule is to prevent 'hunch' arrests on the street, based on nothing more than confidence that a smart prosecutor will discover a legal basis in the courtroom." (*Green, supra,* 40 Cal.3d at p. 137.) Thus, a theory which assumes illegal police conduct but nevertheless sustains the search or seizure, such as inevitable discovery, may be raised for the first time on appeal. (*Ibid.*) *Harris* and *Marquez* stand for such a theory.

Moreover, the rule does not apply "where there does not appear to be any further evidence that could have been introduced to defeat the theory in the trial court and therefore the question of application of the new ground to a given set of facts is a question of law." (*People v. Gorak* (1987) 196 Cal.App.3d 1032, 1039 [242 Cal.Rptr. 307]; accord *Green, supra,* 40 Cal.3d at pp. 137-139.) Again, that is the case here.

 Although the district attorney below and the Attorney General on appeal both failed to advance recent high court precedent directly on point, their default does not bar us from resting our opinion on *Harris* and *Marquez.*

Munford concedes that his "motion to suppress evidence . . . sought exclusion of [his] arrest and the statements which followed the arrest." Under *Harris* and *Marquez,* even assuming that the entry to arrest was unconstitutional, Munford's ensuing statements were admissible.[8]

### 3. *"Knock-Notice" Requirements.*

 Finally, Munford argues that when the police entered the motel room they failed to comply with applicable knock-notice requirements. These requirements are codified in section 844, which states that: "To make an arrest, . . . a peace officer[] may break open the door or window of the house in which the person to be arrested is, or in which they have reasonable grounds for believing him to be, *after having demanded admittance and explained the purpose for which admittance is desired."* (*Duke* v.

---

[8]Munford's motion did not clearly specify the evidence to be suppressed. We have combed the record, and it does not appear that any physical evidence that may have been seized from the motel room was introduced at trial. It likewise does not appear that any statements Munford may have made in the motel room were introduced at trial.

Two exhibits were introduced which were arguably traceable to the warrantless entry and arrest: the clothing Munford was wearing when he was arrested, and a photo display, including a photograph taken of Munford while he was in custody. Under *Harris* and *Marquez,* however, a warrantless arrest in the home taints only evidence found as a result of a search of the home. Since the arrest itself is proper, physical evidence taken from the defendant's person at the police station need not be suppressed. (*People v. Alexander* (1991) 212 Ill.App.3d 1091 [157 Ill.Dec. 56, 571 N.E.2d 1075, 1084], app. den. (1991) 142 Ill.2d 656 [164 Ill.Dec. 919, 584 N.E.2d 131].)

*Superior Court* (1969) 1 Cal.3d 314, 318 [82 Cal.Rptr. 348, 461 P.2d 628].) This has been construed to require the officers "(1) to knock or utilize other means reasonably calculated to give adequate notice of their presence to the occupants, (2) to identify themselves as police officers, and (3) to explain the purpose of their demand for admittance." (*Id.*, at p. 319.)

 Munford, however, failed to assert this before the trial court as a further ground to suppress. Ordinarily, a knock-notice issue not specifically raised below is waived. (*People* v. *King* (1971) 5 Cal.3d 458, 464 [96 Cal.Rptr. 464, 487 P.2d 1032]; *People* v. *Britton* (1984) 156 Cal.App.3d 689, 700 [202 Cal.Rptr. 882].) Munford urges us to reach the issue anyway, arguing that we may do so because (1) it presents a pure question of law based on undisputed facts, citing *Higgason* v. *Superior Court* (1985) 170 Cal.App.3d 929, 942 [216 Cal.Rptr. 817], and *Pena* v. *Municipal Court* (1979) 96 Cal.App.3d 77, 80-81 [157 Cal.Rptr. 584], and (2) he gained no advantage over the prosecution by failing to object, citing *People* v. *Lutes* (1981) 117 Cal.App.3d 830, 832 [173 Cal.Rptr. 300], and *People* v. *Jones* (1980) 111 Cal.App.3d 597, 605 [169 Cal.Rptr. 28].

Due to Munford's failure to object below, the prosecution never had an opportunity to develop a full record on the issue of whether the officers complied with section 844; arguably that issue is not a pure question of law based on undisputed facts. Further, Munford's failure to object, thereby precluding the prosecution from presenting evidence on this issue, gives him an advantage over the People in raising this issue on appeal.

 However, assuming for the sake of argument that the officers *did* violate section 844, the issue of whether suppression was required as a result *does* present a pure question of law. Thus, we will consider Munford's contention on its merits.

Munford's motion to suppress was properly denied even if the officers failed to comply with knock-notice requirements. We believe that *Harris* and *Marquez* apply not only in cases of warrantless entry to arrest, but also in cases of entry to arrest where the officers fail to comply with knock-notice requirements. In both situations, the defendant's subsequent voluntary statements at the police station need not be suppressed.

Knock-notice noncompliance is closely analogous to a warrantless entry to arrest, in that both go to the *manner* of effecting an otherwise lawful arrest. Much like the warrant requirement, section 844 is designed to protect the privacy of the home; in addition, it is designed to protect officers who enter a home for purposes of arrest, and the occupants of the home being

entered. (*Duke* v. *Superior Court, supra,* 1 Cal.3d at p. 321.) Thus, a violation of section 844 nullifies any subsequent search of the home and requires exclusion of evidence obtained in such a search. (*Duke* v. *Superior Court, supra,* 1 Cal.3d at p. 325.) Under *Harris* and *Marquez,* however, it does not vitiate the officer's underlying right to arrest the defendant.[9] Therefore, the defendant's subsequent statements to the police are admissible. (*Albritton* v. *State* (Fla.Dist.Ct.App. 1994) 634 So.2d. 1114, 1117 [under *Harris,* defendant's statements following arrest in violation of knock-notice requirements need not be suppressed].)

B.-E.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

## IV.

### DISPOSITION

The judgment against Watkins is affirmed. The judgment against Munford is hereby modified so as to stay execution of the four-month consecutive sentence enhancement imposed on count II, said stay to become permanent upon Munford's completion of the remainder of his sentence. The trial court is hereby directed to correct the abstract of judgment to show that a four-month consecutive prison term was imposed on the true finding as to count II but its execution was stayed and to forward an amended abstract to the correctional authorities. As so modified, the judgment against Munford is affirmed.

Dabney, Acting P. J., and McKinster, J., concurred.

A petition for a rehearing was denied July 11, 1994, and appellants' petition for review by the Supreme Court was denied September 28, 1994.

---

[9]Our research has revealed no California case in which a violation of section 844 was held to require suppression of the defendant's postarrest statements. In *People* v. *Bruce* (1975) 49 Cal.App.3d 580 [122 Cal.Rptr. 648], the defendant moved on knock-notice grounds to suppress both "items seized by the police at the time of his arrest and a statement he made thereafter." (*Id.,* at p. 582.) On appeal, the court held that section 844 was indeed violated and hence "the trial court should have suppressed the evidence seized . . . and all fruits thereof." We do not construe this as referring to the defendant's statement. If it could be so construed, however, *Bruce* and any like cases would no longer be good law in light of *Marquez.*

*See footnote, *ante,* page 19.