Filed 6/14/22  P. v. Peters CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>       Plaintiff and Respondent,<br><br>v.<br><br>CURTIS JAMES PETERS,<br><br>       Defendant and Appellant. | A162354<br><br>(San Mateo County Super. Ct. No. 20NF008972A) |

Appellant Curtis James Peters pled no contest to a charge of second-degree robbery after the trial court denied his motion to suppress evidence that the victim's recently stolen cell phone was found inside his home.  (Pen. Code, §§ 211, 212.5, subd. (c); 1538.5.)  Appellant contends that the phone should have been suppressed because it was discovered by third parties who were acting as agents for the police, and the police did not have valid consent or a warrant to search.  We disagree.

## I.  BACKGROUND[1]

Ervin Lopez was walking from a market towards his home at about noon on July 31, 2020.  Appellant came out of a house

---

[1] The facts are taken primarily from the hearing on appellant's motion to suppress.

1

and asked Lopez for his cell phone and wallet. Lopez refused, and the two men struggled until appellant reached into Lopez's pocket and took his phone. Appellant fled to the same house from which he had emerged, dropping his wallet on the way. Lopez retrieved the wallet and attempted to catch up to appellant but was unable to do so.

Lopez stayed in the area for about five hours, unable to call anyone because his cell phone had been taken. Eventually, a passer-by allowed Lopez to use his phone to call the police. Lopez went to a nearby community center where he met San Mateo Police Officer Ramirez, who took a description of the robbery suspect and inspected the wallet that the suspect had dropped. It contained an identification card for Curtis James Peters (appellant) bearing an address on North Claremont Street that was a few houses away from where the robbery was committed.

Appellant matched the description of the suspect (age, gender, clothing, race and facial hair), and Officer Ramirez was advised that appellant had been detained near the North Claremont Street address. Officer Ramirez broadcast that Lopez had provided him a wallet with appellant's identification inside, and then drove Lopez to do an in-field show-up of appellant. At the show-up, Lopez said he was 100 percent certain that appellant was the man who had robbed him and taken his phone. Officer Ramirez asked appellant to give him consent to search the address given on his identification card and appellant refused.

Meanwhile, Officer Hussein and his field training officer had responded to North Claremont Street and saw appellant

2

seated on the ground in handcuffs near some other officers. They were present when Lopez identified appellant in the in-field show-up. After Lopez made the identification, Officer Hussein searched appellant incident to arrest and found methamphetamine and a glass smoking pipe.

Officers spoke with individuals standing outside appellant's home, including appellant's mother and two men identified as Harold and Solomon Ross. The officers explained that the police would be seeking a warrant to search the entire house for Lopez's cell phone, which could take five to six hours. Harold Ross went inside the home and retrieved a cell phone that he said he did not recognize and had found on the couch, which he handed to Solomon Ross who then handed it to Officer Hussein. The officers had not gone inside the house at that point and had not directed either Harold or Solomon Ross to retrieve the phone. Police determined that the cell phone retrieved from the house was the phone that had been stolen from Lopez when Officer Ramirez dialed the number that Lopez had given him, and the phone retrieved from the house rang in response.

Appellant was charged by information with second degree robbery, assault by means likely to cause great bodily injury, possession of a controlled substance and possession of drug paraphernalia. (Pen. Code, §§ 211, 212.5, subd. (c), 245, subd. (a)(4); Health & Saf. Code, §§ 11377, subd. (a), 11364.) He filed a motion to suppress evidence, contending that there had been an illegal search of both his person and the residence.

3

At the hearing on the motion to suppress, defense counsel argued that Harold Ross's retrieval of the phone from the house was not voluntary because the officers had told the Rosses that they would be seeking a warrant to look for a phone and that the occupants would be prohibited from entering the house for several hours. The court denied the motion. It noted that there had been no threatening conduct on the part of the officers, that Harold Ross had "freely and voluntarily" decided to walk back into the house and get the phone, and that no one had been coerced into giving the phone to the officers. The court also ruled that the officers had reasonable suspicion to detain appellant because he matched the description of the robber, which evolved into probable cause to arrest once the victim had identified appellant as the robber, and that the search of appellant's person was incident to a lawful arrest.[2]

Appellant pled no contest to second degree robbery in exchange for a three-year probation period conditioned on a year in local custody.[3]

---

[2] The legality of the search of appellant's person incident to arrest is not challenged on appeal.

[3] We requested supplemental briefing on whether recent amendments to section 1203.1, subdivision (a), which reduces the permissible probationary term to two years in most cases, applies retroactively to appellant's case. The two-year limitation does not extend to "[a]n offense listed in subdivision (c) of Section 667.5 and an offense that includes specific probation lengths within its provisions." (§ 1203.1, subd. (l); see *People v. Schulz* (2021) 66 Cal.App.5th 887, 896–898.) Appellant was convicted of robbery, an offense listed in section 667.5, subdivision (c). For section 1203.1, subdivision (l) to apply, a defendant only needs to

4

## II.  STANDARD OF REVIEW

"The standard of appellate review of a trial court's ruling on a motion to suppress is well established.  We defer to the trial court's factual findings, express or implied, where supported by substantial evidence.  In determining whether, on the facts so found, the search or seizure was reasonable . . . we exercise our independent judgment." (*People v. Glaser* (1995) 11 Cal.4th 354, 362.)  In cases where the facts are essentially undisputed, we independently determine the constitutionality of the challenged search or seizure.  (*People v. Balint* (2006) 138 Cal.App.4th 200, 205.)  The trial court's ruling may be affirmed if it was correct on any theory, even if we conclude the court was incorrect in its reasoning.  (*People v. McDonald* (2006) 137 Cal.App.4th 521, 529.)

## III.  DISCUSSION

The victim's stolen cell phone was discovered by Harold Ross on the couch in appellant's home and it was turned over to the police.  Appellant argues that the trial court should have suppressed the phone's discovery because appellant had refused to give consent to search the home and Ross's consent was coerced by police threats to get a warrant and exclude the home's occupants from going inside for several hours.  He also

have committed an offense listed in subdivision (c) of section 667.5, or an offense that includes a specific probation length, not both. (*Schultz,* at p. 898.)  The parties agree that appellant is not eligible to have his probationary term reduced to two years.

5

suggests—apart from arguing the involuntary nature of the consent—that Ross lacked the authority over the premises to consent to the search. We disagree.[4]

"The Fourth Amendment protects an individual's reasonable expectation of privacy against unreasonable intrusion on the part of the government." (*People v. Jenkins* (2000) 22 Cal.4th 900, 971.) A search without a warrant is presumed to be illegal, and the People have the burden of justifying the search by proving that it fell within an exception to the warrant requirement. (*People v. James* (1977) 19 Cal.3d 99, 106.) One exception is voluntary consent to search. (*Ibid.*)

Consent to search may be given by either the defendant or a third party who possesses a common authority over or another sufficient relationship with the premises or effects to be searched. (*United States v. Matlock* (1974) 415 U.S. 164, 171.) A third party's consent is only valid if the person had actual authority to consent or if the police reasonably and in good faith believed there was actual authority. (*People v. Jacobs* (1987) 43 Cal.3d 472, 481.)

Although appellant has framed his argument in terms of the invalidity of a third party's consent, this is not a case where a third party consented to a search by police, and the issue is whether that consent should be given effect. (E.g., *People v. Poole* (1986) 182 Cal.App.3d 1004, 1011–1012.) There was no search of

---

[4] We assume without deciding that appellant's arguments below were sufficient to preserve all issues relating to consent on appeal.

6

the home by police for which consent could be given. Rather, Harold Ross conducted the search leading to the discovery of the phone when he entered the home, located the phone and then turned it over to Solomon Ross, who turned it over to an officer outside the home.

The Fourth Amendment's prohibition against unreasonable searches and seizures does not apply to searches by private citizens unless they are acting as agents for the government. (*People v. Wilkinson* (2008) 163 Cal.App.4th 1554, 1564 (*Wilkinson*).) This is so even if a private citizen acts unlawfully. (*Ibid*.) Thus, there was no Fourth Amendment violation unless Harold Ross was acting as a police agent.[5]

The trial court did not squarely address the question of agency, which is ordinarily a factual issue to be decided by the trial court in the first instance. (*Wilkinson*, *supra*, 163 Cal.App.4th at p. 1564.) But it determined that Ross acted "freely and voluntarily" and was not coerced into action by the police. The facts are undisputed regarding what the officers said

---

[5] Appellant does not cite *Wilkinson* or other cases dealing with private searches per se, but he argues that the "consent" given by Harold Ross was invalid "because police relied on a third party as an agent empowered to search for evidence sought by the police." The Attorney General responds that the house had not yet been "frozen" at the time of the search, and that Harold Ross went into the house "freely and voluntarily and not under police compulsion." The issue of agency in connection with a private search has thus been "proposed" and "briefed" by the parties to this proceeding and supplemental briefing on this point is not necessary. (See Govt. Code, § 68081; *People v. Watkins* (1994) 26 Cal.App.4th 19, 30, fn. 7.)

7

to the occupants prior to Harold Ross's entry into the home. Portions of the body camera footage demonstrating what the officers said about their intent to secure a warrant were played and there is no suggestion that either party lacked access to the complete footage. There does not appear to be any additional evidence that could have been introduced on this point. (See *People v. Johnson* (2018) 21 Cal.App.5th 1026, 1032, 1038 [affirmance of denial of suppression motion on a different theory than the trial court relied upon when the record fully established another basis for affirmance and there does not appear to be any further evidence that could have been introduced to defeat the theory].)

As to whether there was agency, the decision in *Wilkinson* is instructive. There, the boyfriend of the defendant's roommate told the police he suspected the defendant of secretly recording him and the roommate. (*Wilkinson, supra*, 163 Cal.App.4th at p. 1559.) After the defendant refused to allow the police to search his room, the boyfriend became frustrated that the police did not do more and asked an officer if he could search the defendant's room himself. (*Ibid*.) The officer replied that the boyfriend could look anywhere in the apartment because he lived there, but he could not act as an agent of the police. (*Id*. at pp. 1559–1560.) The boyfriend entered the defendant's room and found compact disks of images the defendant had taken surreptitiously of him and the roommate. (*Id*. at p. 1560.) The court concluded "there was insufficient government participation" in the boyfriend's search of the defendant's room to implicate the Fourth

Amendment, reasoning that "the police did not affirmatively encourage, instigate, or initiate" the search of the room, the seizure of the disks, or the viewing of the disks. (*Id.* at pp. 1568–1569.)

In the present case, there is even less evidence of government agency than in *Wilkinson*, where the private actor specifically asked the police if he could conduct the search himself, and the officer knew about the search before it occurred. Here, the officers simply told the Rosses they would be obtaining a warrant, after which Harold Ross went into the house to retrieve the phone without asking for prior police permission to search. Even if we assume the police might have thought it was likely that Ross's purpose for entering the home was to obtain the phone, " 'mere knowledge and passive acquiescence' " on the part of the police do not suffice to establish the private citizen was acting as a government agent. (*Wilkinson*, *supra*, 163 Cal.App.4th at p. 1566.)

## IV.  DISPOSITION

The judgment is affirmed.

9

_____

WISEMAN, .J. *

We concur.

_____

JACKSON, P.J.

_____

SIMONS, J.

*People v. Peters* / A162354

_____

    * Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

1