Filed 3/19/14  P. v. Diaz CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>VICTOR JOHN DIAZ,<br><br>    Defendant and Appellant. | F066114<br><br>(Super. Ct. No. BF137909B)<br><br>**OPINION** |

**THE COURT**\*

APPEAL from a judgment of the Superior Court of Kern County.  John R. Brownlee, Judge.

Tutti Hacking, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Daniel B. Bernstein and Alice Su, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*        Before Cornell, Acting P.J., Gomes, J., and Kane, J.

## INTRODUCTION

On August 10, 2012,[1] a felony information was filed against appellant, Victor John Diaz, charging him with possession of hydrocodone (Health & Saf. Code, § 11350, subd. (a), count 1), possession of methamphetamine for sale (Health & Saf. Code, § 11378, count 2), and possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a), count 3). After the trial court denied appellant's suppression motion on September 21, 2012, appellant entered into a plea agreement in which he would plead no contest to count 2 in exchange for a commitment to county jail for 180 days, three years of formal probation, and dismissal of the other allegations.

Appellant executed a felony advisement of rights, waiver and plea form acknowledging the terms of the plea agreement, the consequences of his plea, and waiving his constitutional rights pursuant to *Boykin*/*Tahl*.[2] The trial court advised appellant of his constitutional rights and the consequences of his plea, took a waiver of appellant's constitutional rights, accepted appellant's plea of no contest to count 2, and dismissed counts 1 and 3. On November 7, 2012, appellant was sentenced according to the terms of the plea agreement. Appellant contends the trial court erred in denying his suppression motion.

## FACTS

Appellant's counsel filed a motion to suppress evidence pursuant to Penal Code section 1538.5. Appellant argued that he was unlawfully detained because there was insufficient particularized evidence that there was criminal activity afoot and the prosecution failed to meet its burden of showing that the search without a warrant was justified.

---

[1]    Subsequent references to dates are to dates in 2012 unless otherwise indicated.

[2]    *Boykin v. Alabama* (1969) 395 U.S. 238; *In re Tahl* (1969) 1 Cal.3d 122.

At the hearing on the suppression motion, the court asked the prosecutor, Mr. Silva, if the People had filed any opposition to appellant's motion. Silva replied that the matter had been set the prior week, it was a surprise, and the district attorney's office had not received a copy of the motion. Although a search was conducted, the motion was never found. Correspondence through e-mails to defense counsel's office were also unsuccessful. A copy of the motion was eventually obtained from the court.

Silva initially argued that the People lacked proper notice to respond to the motion. Silva stated that if the court waived a written response from the People, Silva could prove his case with an evidentiary hearing. The court noted that all of the parties were present and found if there was a problem with the paperwork, the court was sure it was a clerical error. The parties stipulated that Silva could proceed without a written motion and Silva lodged an oral objection to appellant's motion.

Kern County Deputy Probation Officer Heathe Appleton testified that on February 18, 2011, he was working with the California Multi-Jurisdictional Methamphetamine Enforcement Team. Appleton was trained in how to investigate narcotics cases and was assigned to the area at Niles and Vista Streets in Kern County conducting surveillance of a suspected drug dealer, Rafael Monje.

Appleton had been told by Bakersfield Police Officer Jeremy Blackmore, who was assigned to another drug task force, that there was a cigarette/tobacco kiosk on Niles Street operated by Monje that was also used for narcotics sales. The kiosk was labeled a cigarette/tobacco kiosk. The kiosk was white with green trim and located in the middle of a parking lot. At about 9:30 a.m. on February 18, 2011, Appleton began surveilling the kiosk from several different positions, including a parking lot across the street, the parking lot where the kiosk was located, and back across the street. Appleton eventually ended up in a donut shop located next to the kiosk where he had a clear view of the kiosk.

3

Appleton initially saw appellant in the kiosk talking to someone outside of it. Appellant exited the kiosk and walked over to a silver car in the parking lot.[3] Appellant opened the trunk of the car and appeared to be manipulating something inside the trunk. Appellant entered the vehicle from the passenger side. Appellant then went back to the kiosk. Appleton again saw appellant exit the kiosk and go back to the silver car and go into the trunk. It again looked to Appleton like appellant was manipulating items inside the trunk. Appellant did not appear to take anything from the trunk on either occasion.

Appellant went back to the kiosk and continued to converse with the person standing outside it. Appleton suspected this person was a lookout because he kept looking down the street and into the parking lot. He also stayed four to ten feet away from the kiosk.

Appleton saw a Chevy pickup truck arrive. A white male wearing dark slacks and a light colored top exited the truck, walked over to the kiosk and contacted appellant. The two talked for three to five minutes. The man left the kiosk with a paper bag in his hand. The bag was four by six inches long and very flat. Appleton thought it was odd that the bag had no bulge in it because he expected it to contain cigarettes.

Shortly after that, a second vehicle arrived with two females, one Hispanic and the other White. This time Appleton saw appellant inside the kiosk manipulating what looked like a T-shirt of some kind that he held up for the women to see. Appellant handed a bag to one of the women, who then removed a T-shirt from the bag and inspected it. The women talked to appellant and the lookout and left.

---

**3** Although Appleton had never seen Monje before, he had a picture of Monje. Monje and the man in the kiosk, appellant, looked similar. Appleton identified appellant as the man he was watching inside the kiosk. It was also more difficult to tell appellant and Monje apart because appellant was wearing a hooded sweatshirt with the hood pulled up and a hat on top of his head.

Appleton decided to make contact with appellant and called for Deputies Dorkin and Coleman to back him up. Appleton walked over to the kiosk window to see if appellant was Monje, who was under a search condition, and possibly conduct a probation search. Appleton greeted appellant and the lookout and asked appellant if he was Monje. Appellant replied he was Victor Diaz. Appleton identified himself as a peace officer and showed appellant his badge. Appleton told appellant he was conducting a narcotics investigation.

Appleton was dressed in plain clothes. Appleton asked appellant to step out of the kiosk. Although Appleton was armed, his weapon was concealed on his right hip covered by his shirt and not drawn on appellant.

When appellant stepped out of the kiosk, he was two to four feet away from Appleton. Appleton asked appellant if he could search appellant for any contraband. Appellant replied, "Okay." When Appleton began searching appellant, Deputy Dorkin arrived and contacted the lookout.[4]

Appleton found a standard orange prescription bottle inside appellant's right front pant pocket. The bottle, which was blank with no markings, had several white, oblong pills inside. Appleton asked appellant what was inside the bottle. Appleton explained that appellant was not under arrest. Based on his experience as a law enforcement officer, Appleton believed the blank prescription bottle with pills inside "similar to Vicodin" meant appellant could be arrested for being in possession of prescription

---

[4]     During the preliminary hearing conducted on July 31, Appleton's testimony was substantially the same as at the suppression hearing on September 21. Appleton testified that he approached the kiosk, asked appellant if he was Monje, identified himself as a peace officer, showed appellant his badge, and told appellant that he was conducting a narcotics investigation. Appleton asked appellant to step out of the kiosk. Appellant did so. Appleton asked appellant if Appleton could search him for contraband and appellant said, "Okay."

5

medication without a prescription. Appleton found a D style battery in appellant's left front pant pocket. Inside the battery, Appleton found four bags of what he believed to be methamphetamine.

Appleton read appellant his *Miranda*[5] rights. Appellant told Appleton that he understood his rights. When asked if he was selling methamphetamine, appellant initially replied that he was not "slinging," it "was his own thing," and he should not have had the methamphetamine.[6] Appellant admitted he did not have a prescription for Vicodin.

Appleton retrieved appellant's cell phone in the kiosk. Information on the cell phone indicated appellant was selling the Vicodin. There was a communication with one N.H. who was asking for "vikes." From Appleton's experience, this was a reference to Vicodin. Appleton stated that there was no single observation that weighed on him, but he thought appellant's conduct was suspicious under the totality of the circumstances.

Defense counsel's cross-examination of Appleton was brief. Defense counsel asked Appleton about his observation locations, the nature of the bags and packages handed to the patrons Appleton witnessed at the kiosk, whether Appleton talked to the patrons, and whether tobacco products were illegal. At the conclusion of the hearing, defense counsel and the prosecutor submitted the matter without oral argument. The trial court took the case under submission to look up an authority cited in appellant's brief. The trial court denied appellant's suppression motion by minute order without issuing an oral or written opinion.

---

[5]     *Miranda v. Arizona* (1966) 384 U.S. 436.

[6]     At the preliminary hearing, Appleton testified that slinging is street slang describing the selling of narcotics.

## DISCUSSION

*Contentions*

Appellant contends he was detained the moment Appleton asked him to leave the kiosk, Appleton failed to articulate specific facts to rise to a reasonable suspicion criminal activity was afoot to justify a lawful detention, any consent he gave for a search was tainted by an unlawful detention, and the arrest was unlawful. Appellant separately argues the seizure of his cell phone was unlawful because there was no warrant for a search of the kiosk and the search of the contents of his cell phone was unlawful.

The People reply that appellant consented to the search. Appellant counters that the People have waived the issue of consent because it was not raised to the trial court. We find that the facts of this case were developed before the trial court and that the issue of appellant's consent to the search has not been waived for appellate review. We reject appellant's contention that he was illegally detained because he consented to a search. We also reject appellant's contention that this case requires reversal because of the seizure of the text message on his cell phone.

*Alleged Waiver of Consent*

Appellant contends the People have waived the issue of consent because it was not raised to the trial court.

In general, neither the prosecution nor the appellate court can rely upon a new theory on appeal to validate a search or seizure. (*Green v. Superior Court* (1985) 40 Cal.3d 126, 137 (*Green*); *Mestas v. Superior Court* (1972) 7 Cal.3d 537, 542; *People v. Watkins* (1994) 26 Cal.App.4th 19, 30-31; also see *People v. Williams* (1999) 20 Cal.4th 119 (*Williams*).[7]) The danger in late introduction of a new theory is that the defendant

---

[7]    The *Williams* case found the inventory search conducted by investigators there to be invalid because the department did not have an established policy governing the inventory search of a closed container. Although the department did not have to produce

7

might have been prevented from developing relevant facts during examination (*People v. Limon* (1993) 17 Cal.App.4th 524, 539), and thus might have been deprived of a fair opportunity to present an adequate record in response.  While there is an argument that a defendant is entitled to assume the prosecution is presenting its justification for the seizure at the suppression hearing, it is also unmistakably clear that because of the extensive authority supporting the search incident to arrest cited by the prosecution in its written opposition, defendant was clearly on notice at the time of the hearing.

The rule prohibiting consideration of a new justification on appeal is subject to exceptions.  (*Green*, *supra*, 40 Cal.3d at p. 137.)  Where the circumstances surrounding and the reasons for the search or seizure were thoroughly explored below, the appellate court may consider the new theory as applied to those fully developed facts.  (*Id.* at pp. 137-139; *People v. Limon*, *supra*, 17 Cal.App.4th at p. 539.)  The rule does not apply where it does not appear that there is any further evidence that could have been introduced to defeat the theory in the trial court and the question of application on the

a written policy concerning inventory searches, it did have to explain its criteria for such searches including those for closed containers.  (*Williams*, *supra*, 20 Cal.4th at pp. 126-127.)

*Williams* held that the defendant sufficiently raised the issue that the department had an inadequate inventory search policy even though the defendant did not specifically challenge the department's search criteria concerning closed containers.  The Supreme Court did not apply waiver to the defendant's constitutional challenge because the court explained it was the People's burden to overcome the presumption that the warrantless search was invalid by a showing of sufficient evidence that an exception to the warrant requirement existed.  (*Williams*, *supra*, 20 Cal.4th at pp. 135-139.)  The prosecution had the burden of producing evidence concerning its policies for searching closed containers and failed to do so.  (*Id*. at pp. 136-139.)

8

new ground to a given set of facts is a question of law.  (*People v. Watkins*, *supra*, 26 Cal.App.4th at p. 31; *Green*, *supra*, 40 Cal.3d at pp. 137-139.)

Even though *Green* was a plurality opinion, the California Supreme Court has recently reaffirmed its holding, recognizing that issues concerning the prosecutor's burden of proof can be resolved on appeal even if not explicitly litigated below as long as their factual bases are fully set forth in the record.  (*People v. Boyer* (2006) 38 Cal.4th 412, 449; *People v. Brown* (2004) 33 Cal.4th 892, 901; *People v. Robles* (2000) 23 Cal.4th 789, 801, fn. 7.)  In such cases, the appellate court applies the long-settled principle that it must affirm a correct decision, even if that decision is based on erroneous reasoning.  (See *Davey v. Southern Pacific Co.* (1897) 116 Cal. 325, 329 [if ultimate result arrived at by trial court is correct on any theory of law relevant to the case, it must be affirmed]; *El Centro Grain Co. v. Bank of Italy* (1932) 123 Cal.App. 564, 567 [appellate court assesses judicial action, not judicial reasoning]; *People v. Selz* (1955) 138 Cal.App.2d 205, 210.)

At the suppression hearing, the prosecution presented a strong factual basis for the justification that appellant's exit from the kiosk and his consent to a search of his person were both voluntary.  The prosecutor asked Appleton about his approach to the kiosk, his identification of himself as an officer, his request for appellant to exit the kiosk, and appellant's consent to be searched.  Defense counsel had the opportunity to question Appleton concerning any other facts that could vitiate consent, or to call appellant as a witness, and failed to do so.

We further note that Appleton's testimony at the suppression hearing was not a surprise.  Less than two months prior to the suppression hearing, Appleton provided nearly identical testimony at the preliminary hearing concerning appellant's consent to leave the kiosk and to be searched.  Appellant and his trial counsel, therefore, had

9

advance notice prior to the suppression hearing of the details of Appleton's testimony concerning the facts surrounding appellant's voluntary consent to be searched.

We find under these facts and in this procedural posture, the circumstances surrounding the search and seizure were thoroughly explored below and that this court may consider the People's consent theory as applied to these fully developed facts. We reject appellant's argument that the People waived this theory. We further note that although we do not know the legal basis for the trial court's ruling, we can affirm the court's ruling even if it was based on an erroneous legal theory. (*People v. Franklin* (2003) 105 Cal.App.4th 532, 535.)

### Consent to Search and Seizure

Because the power to judge the credibility of witnesses, resolve conflicts in testimony, weigh evidence, and draw factual inferences is vested in the trial court, all presumptions are in favor of the trial court's exercise of that power on appeal. The trial court's findings of fact, express or implied, are given deference if they are supported by substantial evidence. The appellate court exercises its independent judgment to determine whether, on the facts as found by the trial court, the search or seizure was reasonable under the Fourth Amendment. (*People v. Maury* (2003) 30 Cal.4th 342, 384; also see *People v. Alexander* (2010) 49 Cal.4th 846, 883.)

The improper admission of evidence is examined to determine whether the error was harmless beyond a reasonable doubt in light of the other evidence presented at trial, or in this case during the suppression hearing, pursuant to the standard set forth in *Chapman v. California* (1967) 386 U.S. 18. (*People v. Danielson* (1992) 3 Cal.4th 691, 708 [overruled on other grounds in *Price v. Superior Court* (2001) 25 Cal.4th 1046, 1069, fn. 13].) The trial court's ruling that is correct in law on any theory will not be disturbed on appeal merely because the trial court made the ruling for the wrong reason. (*People v. Zapien* (1993) 4 Cal.4th 929, 976.)

10

As the California Supreme Court observed, our United States Supreme Court has made it clear that when a police officer merely approaches an individual on the street and asks a few questions, a detention does not occur. The encounter is consensual as long as a reasonable person would feel free to disregard the police and go about his or her business. No reasonable suspicion is required by the officer. A seizure does not occur unless the officer restrains the individual's liberty by means of physical force or show of authority. Courts must consider all of the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the individual was not free to decline the officer's requests. This test assesses the coercive effect of police conduct as a whole rather than examining particular details of that conduct in isolation. (*In re Manuel G.* (1997) 16 Cal.4th 805, 821 (*Manuel G.*); also see *Florida v. Bostick* (1991) 501 U.S. 429, 434.)

Establishing a seizure might include any of the following circumstances: "the presence of several officers, an officer's display of a weapon, some physical touching of the person, or the use of language or of a tone of voice indicating that compliance with the officer's request might be compelled." (*Manuel G.*, *supra*, 16 Cal.4th at p. 821, citing *United States v. Mendenhall* (1980) 446 U.S. 544, 554 [opn. of Stewart, J.].) The officer's uncommunicated state of mind and the individual citizen's subjective belief are irrelevant in assessing whether a seizure has occurred under the Fourth Amendment. (*Manuel G.*, *supra*, 16 Cal.4th at p. 821.)

Appleton's undisputed testimony was that he was dressed in plain clothes with his service gun concealed by his shirt. Appleton showed appellant his badge, identified himself as an officer, and told him he was investigating illegal narcotics transactions. Appleton asked appellant to exit the kiosk. Appleton did not order or command appellant to leave the kiosk. Implicit in the question was appellant's right to refuse the request.

11

Appleton asked appellant if he could search him for contraband.  Appellant did not hesitate and said "Yeah," or "Okay."  Appleton did not have his gun drawn when he asked appellant if he could search him.  Appleton's testimony was consistent in both the preliminary hearing and the suppression hearing.  A backup deputy arrived to talk to the lookout as or just after Appleton started his search of appellant.  All of these proceedings occurred just outside the kiosk, which was located in a parking lot open to the public.[8]

The evidence adduced at the suppression hearing shows that appellant voluntarily consented to exit the kiosk and to be searched by Appleton.  Where the defendant consents to a search, there has not been an unlawful detention.[9]

### Seizure of Text Message

Appellant contends the trial court erred in denying his suppression motion of the text message because Appleton did not have a warrant to enter the kiosk.  Appellant argues that the holding of *People v. Diaz* (2011) 51 Cal.4th 84, 93-101, does not apply because the cell phone was not found on his person as it was in *Diaz.*

We do not need to resolve any potential factual and legal differences between this case and the *Diaz* decision.  We hold that even if the search and seizure of appellant's cell phone message was unreasonable under the Fourth Amendment, admission of the text

---

[8]     We reject appellant's contention that the entire encounter was an unreasonable detention because appellant was in his place of work and had a job to perform.  We note that appellant himself left the kiosk twice to go to his car.  We also find *People v. Shields* (1988) 205 Cal.App.3d 1065, 1068-1074, relied upon by appellant, to be inapposite to the facts of this case.  In *Shields*, an employer invited officers into his private business.  The officers detained the defendant and searched his work area without a warrant or reasonable suspicion that the defendant had committed any crime.  Here, the kiosk was in a parking lot open to the public and appellant's activities were being monitored from other public areas.  The expectation of privacy in this case is diminished compared to the workplace described in *Shields*.

[9]     In light of our holding, we do not discuss appellant's lengthy argument on his contention that there was an illegal detention and an illegal seizure.

message was harmless beyond a reasonable doubt under *Chapman v. California*, *supra*, 386 U.S. 18. Appleton found narcotics on appellant after he voluntarily consented to the search. Appleton found the Vicodin in an unlabeled medicine bottle. After receiving and waiving *Miranda* warnings, appellant admitted he did not have a prescription for Vicodin. This evidence was very inculpatory. The text message appellant seeks to suppress only corroborated stronger evidence of appellant's guilt. The failure to suppress the text message was harmless beyond a reasonable doubt.

## DISPOSITION

The judgment is affirmed.